**CITY OF BOLIVAR, Plaintiff–Appellee,**

v.

**Horace JARRETT, Defendant–Appellant.**

Supreme Court of Tennessee,
at Jackson.

May 23, 1988.

K. Don Bishop (on appeal), David M. Livingston (at trial), James T. Sanderson & Associates, P.C., Bolivar, for defendant-appellant.

Robert L. Sabbatini, Shuttleworth, Smith & Webb, Memphis, for plaintiff-appellee.

OPINION

DROWOTA, Justice.

In this Workers' Compensation case, Defendant-employee, Horace Jarrett, appeals from the judgment of the Circuit Court for Hardeman County, awarding him benefits for a 10 percent permanent partial disability to the left foot, a scheduled member. This action was initiated by Defendant's employer, the City of Bolivar. On appeal, the determinative issue is whether material evidence supports the judgment of the trial court as to whether the appearance of blood in Defendant's urine was caused by his work-related accident and whether this condition permanently disables him.

Defendant, 43 years old at the time of trial, worked for the City of Bolivar (Plaintiff) for about a year prior to his accident. On March 5, 1985, while performing his duties as a garbage pick-up laborer, a front wheel of the garbage truck ran over him, injuring his left foot, leg, flank, and back. He was taken immediately to a local hospital and then to a hospital in Jackson, Tennessee, where he was admitted for surgery on his left foot and treatment of his other injuries. He remained hospitalized for about a week and was discharged under the care of an orthopedic surgeon, who continued his follow-up care until July 24, 1985, at which time he was told he could return to work after three more weeks of convalescence. He was released for work with a 10 percent permanent partial residual impairment to his left foot but without any work limitations. Defendant did not, however, return to work for Plaintiff in large part because blood had appeared in his urine, which was made worse by lifting activities. The Plaintiff filed this suit on November 6, 1985, to obtain a determination of Defendant's Worker's Compensa-

tion benefits. On February 26, 1987, the case was tried.

Defendant testified regarding the events surrounding his injury on March 5, 1985. He stated that blood appeared in his urine shortly after his admission to the hospital and that he had not previously experienced this problem before his accident. He can no longer work because even moderate lifting causes blood to appear in his urine. He is unable to do most household chores and still experiences pain from his injuries to his foot, hip, and back. He testified that he is presently unable to work. He was last paid temporary total disability on August 15, 1985. Although two years had passed since the accident, he continues to have blood in his urine periodically, especially after doing much lifting or straining. He neither told his physicians while hospitalized in March, 1985, that he had blood in his urine nor did he inform his follow-up care physician of this problem; however, in January, 1986, he was referred by his family doctor to a urologist in Jackson for this problem and has continued under this doctor's care since that time. Defendant testified that he has outstanding medical and hospital bills from this treatment. He continues to take pain medication and medication to control the blood in his urine. He must use a cane to walk and cannot walk very far without experiencing pain in his foot and back.

Defendant's wife of 23 years, Myrtle Jarrett, also testified. She corroborated the Defendant's testimony that he habitually depends upon a cane to walk, that he complains of pain in the areas of his injuries, and that he is unable to do household chores. She stated that she had seen blood in his urine and that he had never had this problem prior to his accident in March, 1985. She also testified that she did not think he could work because of his injuries.

The testimony of two physicians was taken by deposition. Dr. John Everett, an orthopedic surgeon, performed surgery on Defendant's left foot and undertook his follow-up care. He first saw Defendant on the day of the accident after he was admitted to the hospital in Jackson. His examination revealed that he had injuries to his left side involving his back, hip, and leg. His left forefoot was crushed with his great or big toe and second toe broken and lacerated. Tests showed that surgery was necessary to repair dislocation of the joint of the second toe and the fracture of his great toe. In addition, a laceration extended into the web between the great and second toes. Defendant remained hospitalized until March 12, 1985. Dr. Everett saw Defendant a number of times following his release. Defendant continued to complain of pain in his hip and back but tests revealed no objective indicia of injury to these areas, aside from an unresolved hematoma over his left buttock, which another physician treated by draining it. He continued to treat Defendant and by July 24, 1985, he believed that he had reached maximum medical improvement and could be released for work on August 15, 1985, despite some unexplained residual back pain. At the time of his release, Dr. Everett attributed a 10 percent permanent partial disability to his left foot but placed no limitations on his capacity to work. He did not see Defendant again until March, 1986. At that time, Defendant was using a cane and still complaining of pain in the areas of his injuries. He was told at this visit that Defendant had been seeing a urologist. Dr. Everett stated that an injury to the kidneys would be compatible with the nature of the injuries suffered by Defendant and that bruising of the kidneys would not necessarily be revealed by tests. Nevertheless, he was not in a position to say whether Defendant had any renal injury but he did not believe that Defendant was malingering.

Dr. Clarence Driver, a urologist, saw Defendant on referral from his family physician on January 17, 1986, for blood in his urine. He hospitalized Defendant for tests but was unable to diagnose the cause of bleeding on this occasion because Defendant had ceased to bleed. Defendant was subsequently rehospitalized on February 17, 1986, and tests revealed that only his left kidney was passing blood. He diagnosed the condition as arteriovenous malformation, which is common following a

blunt trauma of the kind experienced by Defendant. The precise source of the bleeding could not, however, be found. Defendant has continued to experience periodic bleeding episodes, for which he has prescribed medication. He also complains of pain in his hip and back. Although the bleeding has lessened, it is associated with and increased by lifting. Diagnosis of the bleeding has proven elusive, but Dr. Driver unequivocally stated that, considering the lack of a prior history of blood in his urine and the March, 1985, accident, in his opinion "the trauma ... caused the patient's problem with the periodic episodes of gross hematuria." He instructed Defendant not to do any heavy lifting or straining, especially during an episode of bleeding. When asked whether the condition was permanent, he stated that "I have no earthly idea [how long this condition is going to last].... He may stop tomorrow. He may never bleed again.... [But it] could [also] be permanent." Moreover, Dr. Driver believed that "as long as he passes gross blood ... [Defendant] is disabled," but he could do sedentary work. Dr. Driver reiterated that any opinion as to permanency would be purely speculative; nevertheless, Defendant has been bleeding for two years and has not yet stopped.

The date of the accident in this case requires that this Court conduct its review under the material evidence rule. *See Alley v. Consolidation Coal Co.*, 699 S.W.2d 147, 147–148 (Tenn.1985). Regardless of the limited scope of review, we have concluded that this case must be remanded for further proceedings on the issues of permanency, eligibility for temporary partial disability under T.C.A. § 50–6–207(2) (Supp. 1987), and medical attendance under T.C.A. § 50–6–204.

■ On the issue of causation, we find that no material evidence supports the trial court's conclusion that the blood in Defendant's urine was not caused by the March 5, 1985, accident. Dr. Everett was not in a position to state an opinion on this question and to the extent that he did offer any opinion on the cause of the bleeding, he corroborated Dr. Driver's unequivocal statement that the accident was the cause of the appearance of blood in Defendant's urine. No evidence in this record supports the trial court's conclusion to the contrary. Regardless, Dr. Driver could not determine whether Defendant's condition is permanent nor could he state that it would or would not improve or deteriorate; the injury from which he suffers was caused by a work-related accident but has not yet resulted in a ratable permanent disability, despite the fact that his condition has stabilized. Dr. Driver was unable to determine whether the Defendant's bleeding was merely temporary or would be permanent; medical treatment does not seem to do more than to control it to some extent. Nevertheless, Dr. Driver did consider Defendant to be disabled from the type of labor he was performing at the time of his injury. Consequently, we remand this case to the trial court to permit the medical proof to be supplemented on the issue of permanency or, if permanency cannot be adequately established, consideration of Defendant's eligibility for temporary partial disability would be appropriate. *See Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 457–458 (Tenn.1988) (Remand appropriate in some cases). *See also* T.C.A. § 27–3–128.

■ Moreover, because causation is clearly shown on this record, we reverse the trial court's denial of medical benefits, which are separate and distinct from benefits for any degree of permanent disability. Under T.C.A. § 50–6–204, the employer is required to furnish the employee such medical treatment and medicine as may be reasonably required as a result of the accident. *See also, e.g., Jackson v. Greyhound Lines, Inc.*, 734 S.W.2d 617, 621 (Tenn.1987); *P.R. Mallory & Co. Inc. v. Ramsey*, 566 S.W.2d 859, 861 (Tenn.1978); *New Jersey Zinc Co. v. Cole*, 532 S.W.2d 246, 251 (Tenn.1975). The case is remanded for any proceedings necessary to determine the amount of such medical benefits and for any other matters consistent with this opinion.

Accordingly, we reverse the judgment of the trial court and remand this case for

further proceedings consistent with this opinion. The costs are taxed to the Plaintiff–Appellee, City of Bolivar.

HARBISON, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.