IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 4, 2005 Session

# CONNIE FRANCES FRITTS v. SAFETY NATIONAL CASUALTY CORP.

**Appeal by Permission from the Special Workers' Compensation Appeals Panel
Chancery Court for McMinn County
No. 20675     Jerri S. Bryant, Chancellor**

―――――――――

**No. E2003-01456-SC-WCM-CV - Filed April 21, 2005**

―――――――――

The employee in this workers' compensation case suffered a spontaneous and large right-lung pneumothorax while at work. The pneumothorax required two corrective surgeries and resulted in treatment with narcotics for chronic pain. After a careful review of the record, we conclude that the injury sustained was an accidental injury arising out of and in the course of her employment. We further hold that the evidence supports the trial court's finding that the employee was totally and permanently disabled. We affirm the trial court's judgment and remand for further proceedings consistent with this opinion.

**Tenn. Code Ann. § 50-6-225(e); Findings of Fact and Conclusions of Law by the Special Workers' Compensation Panel Rejected; Judgment of the Trial Court Affirmed; Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and ADOLPHO A. BIRCH, JR., JJ., joined. WILLIAM M. BARKER, J., not participating.

Peter J. Alliman, Madisonville, Tennessee, for the Plaintiff-Appellant, Connie Frances Fritts.

Kent Thomas Jones, Chattanooga, Tennessee, for the Defendant-Appellee, Safety National Casualty Corp.

## OPINION

Connie Fritts was thirty-nine years old at the time of trial. She completed eight years of education and has no special job training or skills. Her employment history includes working as a presser and clipper in a sewing factory, as a cashier, and as a tobacco cutter. She also has performed odd jobs such as cleaning houses and mowing yards. In 1998, Mrs. Fritts was employed by Athens

Furniture ("Athens") where she worked in the roll-coat room performing tasks such as hand-sanding, spraying varnish, and operating the wide belt and buffer. Mrs. Fritts was a long-time smoker and had pre-existing bronchitis and chronic obstructive pulmonary disease ("COPD"). She experienced a small left-lung pneumothorax[1] in 1993 and again in 1995, both of which healed without surgical treatment. On September 15, 2000, Mrs. Fritts suffered a large, right-lung pneumothorax while working at Athens. At the time of her injury, Mrs. Fritts was in good health and had no limitations on her work or personal activities. The defendant, Safety National Casualty Corporation ("Safety National"), was the workers' compensation insurer for Athens in 2000. The plant closed in 2001.

On the day of the injury, Mrs. Fritts was spraying varnish in the roll-coat room. Mrs. Fritts and her co-worker, Barbara Tuttle, testified that the room was unusually dusty, with sawdust, fumes, and varnish spray in the air. Ms. Tuttle and Misty Hamilton were working with Mrs. Fritts when she bent over and began to cough. Mrs. Fritts testified that the fumes and dust caused her to start "coughing real bad," that she could not breathe, and that the "whole right side"of her chest was hurting. Her husband, Bennie Fritts, and the "lead person," Roger Dale Williams, took Mrs. Fritts outdoors. Mr. Fritts and Mr. Williams then notified Ronnie Kennedy, a supervisor, of the coughing incident.

Mrs. Fritts continued to experience severe pain and breathing difficulties. During an emergency room visit on September 17, 2000, she was diagnosed with a large right-lung pneumothorax, and a chest tube was inserted. The chest tube, however, failed to keep her lung properly inflated. On September 26, 2000, a surgical procedure was performed to reattach her lung to the chest wall. This procedure resulted in granulomatous pleurisy and scarring, causing severe pain and continued breathing problems. Mrs. Fritts underwent a second surgery in March 2001 to keep her right lung inflated and to repair the damage from the first surgery. Mrs. Fritts continued to suffer chronic pain and breathing difficulties. She was prescribed two narcotic drugs, OxyContin and Endocet, and a non-narcotic pain medication, Neurontin, all of which she was using at the time of trial.

Three physicians testified by deposition. Although portions of their testimony conflicted, all three physicians agreed that Mrs. Fritts was predisposed to a pneumothorax due to her COPD and earlier pneumothoraxes and that smoking was an underlying factor in causing her 2000 right-lung collapse. Dr. Charles Cox testified that the coughing episode could have caused the pneumothorax. Dr. William Bailey testified that the work environment led to the coughing that caused the pneumothorax. Dr. John McElligott testified that the pneumothorax was not related to her work and was caused by smoking.

The trial court credited the testimony of Dr. Cox and Dr. Bailey and found that Mrs. Fritts suffered a compensable injury by accident arising out of and in the course of her employment. The

---

[1] A pneumothorax is commonly known as a collapsed lung.

trial court ruled that Mrs. Fritts developed pleurisy as a complication and result of her injury, that she is permanently and totally disabled, and that the employer had proper notice of the injury.[2]

The insurer appealed, arguing that the injury was not causally related to the employment. The insurer also contends that the trial court should have analyzed this case as an occupational disease rather than as an injury by accident and that the evidence was insufficient to support a finding of total and permanent disability. The case was referred to the Special Workers' Compensation Appeals Panel ("Panel") pursuant to Tennessee Code Annotated section 50-6-225(e)(3) (Supp. 2003). The Panel reversed and dismissed, finding that the employee was suffering from a pre-existing disease caused primarily by smoking, that there was no anatomical or physiological change in her pre-existing condition, and that under the occupational disease statute the employee's condition did not "originate and arise out of" her employment. We granted full court review.

## I. Compensable Injury

To be compensable, an injury or occupational disease must arise out of and in the course of employment and cause either disablement or death. Tenn. Code Ann. § 50-6-102(12) (1999). The phrase "in the course of" refers to the time, place, and circumstances of the injury, and "arising out of" refers to its cause or origin. Hill v. Eagle Bend Mfg., Inc., 942 S.W.2d 483, 487 (Tenn. 1997). Thus, an accidental injury arises out of and is in the course of employment if it has a rational connection to the employment and occurs while the employee is doing the work she was employed to perform. Guess v. Sharp Mfg. Co. of Am., 114 S.W.3d 480, 484 (Tenn. 2003). The employee in a workers' compensation suit bears the burden of proving every element of the case by a preponderance of the evidence, including the existence of a work-related injury by accident. Talley v. Va. Ins. Reciprocal, 775 S.W.2d 587, 591 (Tenn. 1989).

### A. Course of Employment

Mrs. Fritts, Ms. Tuttle, and Ms. Hamilton testified they were working in the roll-coat room when Mrs. Fritts had a "bad" coughing episode followed immediately by pain in her right chest and breathing problems. Ronnie Kennedy, a former lead person and supervisor at Athens, testified that he was present during Mrs. Fritts' shift on September 15, 2000, but denied being told that Mrs. Fritts had a coughing spell at work. Mr. Kennedy stated that Bennie Fritts told him the following Monday that Mrs. Fritts' lung collapsed when she fell off the porch at home.

The trial court specifically found that Mr. Kennedy was not a credible witness and instead credited the testimony of Mrs. Fritts, Ms. Tuttle, Ms. Hamilton, and, inferentially, Bennie Fritts. When issues of credibility of witnesses and the weight to be given their in-court testimony are before

---

[2] Mrs. Fritts and her husband testified that the lead person, Roger Dale Williams, had actual notice of the incident. Mr. Fritts testified that he and Mr. Williams notified Ronnie Kennedy, a supervisor, immediately after the coughing incident. Mr. Kennedy testified that he was not a supervisor in September 2000 and denied any knowledge of the coughing incident. The trial court did not find Mr. Kennedy to be a credible witness and found that the employer had actual notice of the injury. The evidence does not preponderate against the trial court's findings.

the reviewing court, considerable deference must be accorded to the factual findings of the trial court. Richards v. Liberty Mut. Ins. Co., 70 S.W.3d 729, 733 (Tenn. 2002); see Rhodes v. Capital City Ins. Co., 154 S.W.3d 43, 46 (Tenn. 2004) (holding that the trial court's findings with respect to credibility and weight of the evidence may generally be inferred from the manner in which the court resolves conflicts in the testimony and decides the case). The trial court found that this injury occurred in the course of Mrs. Fritts' employment, and the evidence does not preponderate against this finding.

## B.  Arising Out Of

To be compensable, the injury also must have its cause or origin in the workplace. Tenn. Code Ann. § 50-6-102(12) (1999). An accidental injury arises out of employment when there is a causal connection between the working conditions and the resulting injury. Phillips v. A&H Constr. Co., 134 S.W.3d 145, 150 (Tenn. 2004). Mrs. Fritts, Ms. Tuttle, and Ms. Hamilton testified that the room in which they were working was filled with dust, fumes, and "strong" varnish spray. During their shift, Mrs. Fritts began coughing and experiencing right chest pain and breathing problems requiring her to go outdoors. Mr. Kennedy agreed that it was not unusual for dust and spray to be present in the roll-coat room.

In most cases of work-related injury, causation must be established by expert medical evidence. Tindall v. Waring Park Ass'n, 725 S.W.2d 935, 937 (Tenn. 1987). However, absolute certainty in the medical evidence is not required since expert opinion by its very nature is always more or less uncertain and speculative. See Chapman v. Employers Ins. Co. of Ala., 627 S.W.2d 122, 123 (Tenn. 1981). Acknowledging the imprecision and uncertainty of medical proof of causation, any reasonable doubt must be construed in favor of the employee. White v. Werthan Indus., 824 S.W.2d 158, 159 (Tenn. 1992). Benefits may properly be awarded upon medical testimony that shows the employment "could or might have been the cause" of the employee's injury when there is lay testimony from which causation reasonably can be inferred. Clark v. Nashville Mach. Elevator Co., 129 S.W.3d 42, 47 (Tenn. 2004).

All three physicians testified that smoking and COPD were underlying causes of the pneumothorax. Dr. Cox, a surgeon who treated Mrs. Fritts in the emergency room in 1993 and 2000, explained that smoking tends to cause the development of emphysematous changes in the lungs so that "blebs" near the surface of the lung develop. These blebs may burst, causing a pneumothorax. Based upon Mrs. Fritts' medical history, Dr. Cox testified that a coughing episode would have been a contributing factor and could have caused the pneumothorax. He also stated that particulate matter or anything that causes irritation or coughing could have contributed to the pneumothorax.

Dr. Bailey practices physical medicine and rehabilitation and treats intractable chronic pain. He examined Mrs. Fritts and reviewed her records. Dr. Bailey testified that a lung can collapse from trauma such as coughing and that Mrs. Fritts' coughing episode caused the right-lung pneumothorax by jarring "the lung away from the [chest] wall." He testified that the coughing episode was directly related to Mrs. Fritts' work environment.

4

Dr. McElligott is an occupational health physician who saw Mrs. Fritts on a referral from Safety National's attorney and reviewed her medical records. In his opinion, her present condition was not work-related and was due solely to her smoking and prior pneumothoraxes. He believed that coughing could not have caused the 2000 pneumothorax. He stated that Mrs. Fritts "could be sitting at home picking her nose, she's going to have another pneumothorax" and that she just happened to be at work when this one occurred. In his opinion, a spontaneous pneumothorax can occur without a cough, and a cough is not usually a causative factor. The trial court commented on Dr. McElligott's possible bias and inappropriate testimony and stated that it "gave much greater weight" to the testimony of Dr. Bailey and Dr. Cox.

The record amply supports the trial court's findings of fact, which largely depended upon its findings of credibility. The court's factual findings are entitled to considerable deference. Richards, 70 S.W.3d at 732. When expert medical testimony differs, it is within the trial judge's discretion to accept the opinion of one expert over another. Hinson v. Wal-Mart Stores, Inc., 654 S.W.2d 675, 676-77 (Tenn. 1983). This Court, however, may draw its own conclusions about the weight and credibility to be given to expert testimony when all of the medical proof is by deposition. Krick v. City of Lawrenceburg, 945 S.W.2d 709, 712 (Tenn. 1997). The trial court gave much greater weight to the testimony of Dr. Bailey and Dr. Cox. Drawing our own conclusions about the weight and credibility of the expert testimony, we find nothing in the record that would cause us to reach a different conclusion.

We are also unpersuaded that Mrs. Fritts' pre-existing bronchitis and COPD bar recovery in this case. An employer takes an employee as she is along with the risk of having an employee's weakened condition aggravated by an injury that might not harm a normal, healthy person. Hill, 942 S.W.2d at 488. The employer is liable if an accidental injury is causally related to and brings about the disability by the aggravation, actual progression, or anatomical change of the pre-existing condition. Tobitt v. Bridgestone/Firestone, Inc., 59 S.W.3d 57, 62 (Tenn. 2001). The trial court found that the dust, fumes, and spray caused Mrs. Fritts to cough and precipitated a right-lung pneumothorax, clearly an anatomical change. In turn, the subsequent surgeries required to correct the work-related pneumothorax caused scarring, resulting in Mrs. Fritts' chronic pain syndrome.

We are similarly unpersuaded by Safety National's argument that this case should be decided under the occupational disease statute in the Workers' Compensation Act because Mrs. Fritts suffered from a pre-existing lung disease caused by smoking. See Tenn. Code Ann. § 50-6-301(6) (1999) (stating that "[d]iseases of the heart, lung, and hypertension arising out of and in the course of any type of employment shall be deemed to be occupational diseases"). Interpreting this statute, this Court has held that an occupational disease is one that commonly occurs to persons engaged in a particular occupation, such as a painter affected by exposure to lead. Brown Shoe Co. v. Reed, 350 S.W.2d 65, 71 (Tenn. 1961).

In contrast, "accident" as it applies to the Workers' Compensation Act is a mishap or event that is unexpected, cannot reasonably be anticipated, and is "produced by unusual combinations of fortuitous circumstances." Id. at 69. An "injury" includes a change in any part of a person's system

5

that produces harm or pain or lessens the natural use or capability of the body. See id. at 68. The Workers' Compensation Act provides compensation for the accidental result. Fink v. Caudle, 856 S.W.2d 952, 958 (Tenn. 1993).

The fact that "diseases of the heart, lung and hypertension" are listed as "occupational diseases" in Tennessee Code Annotated section 50-6-301(6) does not turn all injuries to the heart and lung into occupational diseases. This Court has recognized that a heart attack may be an injury by accident when it is causally related to employment, even if the employee was suffering from pre-existing heart disease and even if the heart attack was caused only by the ordinary exertion of the work. See Clark, 129 S.W.3d at 47. Benefits are recoverable for an injury by accident if the heart attack is precipitated by the physical exertion of the employment. Cunningham v. Shelton Sec. Serv., Inc., 46 S.W.3d 131, 136 (Tenn. 2001). Lung injuries have also been held to be compensable as injuries by accident. Evans v. Olin Corp., 686 S.W.2d 76, 78 (Tenn. 1985) (upholding a finding of permanent disability to the lungs as a result of accidental exposure to liquid chlorine on three occasions, including one incident in which liquid chlorine struck the employee's face and shoulder).

Mrs. Fritts suffered a compensable injury on September 15, 2000, when her work environment caused a coughing spell that precipitated her pneumothorax. The evidence does not preponderate against the trial court's finding that Mrs. Fritts' injury arose out of her employment with Athens.

## II. Vocational Disability

The trial court should consider both lay and expert testimony in determining the extent of an employee's disability and is not bound to accept a physician's opinion in this regard. Hinson, 654 S.W.2d at 677. A plaintiff's own assessment of her physical condition and resulting disability is competent testimony and must be considered. Walker v. Saturn Corp., 986 S.W.2d 204, 208 (Tenn. 1998).

Mrs. Fritts and several co-workers and family members testified that before the 2000 pneumothorax she led an active life working at the furniture factory, cleaning houses, taking care of her home and family, mowing, riding horses, and fishing. After the injury she has been unable to do any of these activities. At times she cannot get out of bed or out of a chair by herself. She cannot use her arms as she once could, and she experiences more pain when she moves. She sits "like she's strung out all the time" and is "groggy and staggering." Her husband testified that Mrs. Fritts is sometimes unable to keep up with her medications and that he and the children must assist her. Mrs. Fritts testified that the medications make her groggy, drowsy, and unable to concentrate and that she does not drive for fear of having an accident.

Dr. Bailey limited Mrs. Fritts to light duty but stated that she should not be exposed to fumes, dust, extremes of heat, or anything that might cause coughing. She is also limited to jobs that do not require bending, reaching, or using her arms. Dr. Bailey assessed a 5% permanent partial impairment rating to the body as a whole for her chronic pain syndrome. Because of the narcotics

she has been prescribed, Mrs. Fritts is "under the influence" at all times and should not work or drive. Dr. Bailey stated that Mrs. Fritts' condition will require continued treatment with these or similar narcotic medications. Dr. McElligott agreed that Mrs. Fritts should not drive or work while taking the prescribed narcotic medications, although he questioned her level of pain and her need for the medications.

For permanent total disability benefits to be awarded, the disability must prevent the employee from working at an occupation that brings the employee an income. Tenn. Code Ann. § 50-6-207(4)(B) (1999); see also Rhodes, 154 S.W.3d at 47. Both lay and medical testimony establish that Mrs. Fritts is unable to work, drive, or participate in normal household and recreational activities because of her pain and narcotic medications. Considering her physical condition, anatomical impairment rating, age, eighth-grade education level, and lack of skills and training, the trial court found that Mrs. Fritts was permanently and totally disabled. See Walker, 986 S.W.2d at 208. From our independent examination of the record and consideration of all relevant factors, and giving due deference to the trial court's findings of fact, we cannot say that the evidence preponderates against the trial court's finding of permanent total disability.

### III. CONCLUSION

Upon a careful review of the record, this Court concludes that the evidence does not preponderate against the trial court's findings that Mrs. Fritts suffered an accidental injury arising out of and in the course and scope of her employment and that she is permanently and totally disabled. We affirm the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion. Costs are assessed against Safety National Casualty Corporation and its sureties, for which execution may issue if necessary.

 

 

_____
JANICE M. HOLDER, JUSTICE

7