IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 7, 2006 Session

## DONALD FITZGERALD  v.  BTR SEALING SYSTEMS NORTH AMERICA–TENNESSEE OPERATIONS

**Direct Appeal from the Chancery Court for Blount County**
**No. 98-097      Telford E. Forgety, Jr., Chancellor**

---

**No. E2005-2648-SC-R3-CV - Filed on October 12, 2006**

---

This workers' compensation action arose out of an employee's motion to compel medical treatment. The employee had settled a workers' compensation claim with his employer involving a work-related injury sustained in 1997.  This settlement provided that the employer was responsible for future medical treatment. The employer refused to pay for recommended shoulder joint replacement surgery, arguing that the need for the surgery was not causally related to the initial injury.  The trial court found that the need for the surgery was related to the initial injury and ordered the employer to provide for that treatment.  The employer appealed, arguing that the trial court improperly shifted the burden of proof to the employer and that the evidence did not support the finding that the need for surgery was causally related to the initial injury.  We accepted review before the case was heard or considered by the Special Workers' Compensation Appeals Panel.  We hold that the trial court did not shift the burden of proof to the employer and that the evidence does not preponderate against the trial court's finding of causation.  Accordingly, we affirm the judgment of the trial court.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Trial Court is Affirmed**

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., and E. RILEY ANDERSON, SP.J., joined.

Nathan E. Evans, Chattanooga, Tennessee, for the appellant, BTR Sealing Systems North America–Tennessee Operations.

Garry Ferraris, Knoxville, Tennessee, for the appellee, Donald Fitzgerald.

## OPINION

### Factual Background

The plaintiff, Donald Fitzgerald ("Fitzgerald"), began working for the defendant, BTR Sealing Systems North America–Tennessee Operations ("BTR"), in 1989. On or about May 15, 1997, while working as a saw operator for BTR, Fitzgerald suffered an injury to his right shoulder. He notified his employer, who sent him to see Dr. William M. Hovis ("Dr. Hovis"), an orthopedic surgeon.

Fitzgerald told Dr. Hovis that he had been experiencing right shoulder pain for approximately five years and had previously been treated conservatively for the pain. He did not describe any specific injury. Dr. Hovis diagnosed degenerative arthritis of the right shoulder, tendinitis of the rotator cuff, impingement syndrome, and mild degenerative arthritis of the cervical spine. Dr. Hovis also noticed the presence of a loose body in the right shoulder joint.

After first treating Fitzgerald conservatively, Dr. Hovis performed arthroscopic surgery on Fitzgerald's right shoulder on August 19, 1997. Dr. Hovis explained that the arthroscopic surgery could not cure the arthritis and that his treatment options for the arthritis, beyond conservative therapy, would involve either a shoulder fusion or an artificial shoulder joint.

Fitzgerald's shoulder improved following the surgery, and he was released to return to work on January 20, 1998. Dr. Hovis assigned a permanent medical impairment rating of ten percent to the shoulder. Fitzgerald settled his claim for workers' compensation benefits with BTR for eight percent permanent disability to the body as a whole, with future medical benefits left open. This settlement agreement was approved by the Chancery Court for Blount County by order dated December 8, 1998.

Fitzgerald continued to work for BTR until BTR closed its plant in 1999. In 2001, Fitzgerald went to work at Blount County Memorial Hospital where his duties included transporting patients and stocking supplies. In 2003, he changed positions at the hospital to work in the maintenance department as a painter.

Fitzgerald continued to see Dr. Hovis periodically for evaluation and treatment at BTR's expense. In January 2002, Dr. Hovis examined Fitzgerald and found "severe arthritic change [to the] right shoulder." Dr. Hovis told Fitzgerald that, because the arthritis medications were not helping him, he only had two other treatment options: a shoulder fusion or an artificial shoulder joint. In November 2003, Fitzgerald stated that his pain was becoming more severe and that he was having trouble sleeping at night. Examination and x-rays revealed "advanced degenerative arthritis of the shoulder." Dr. Hovis and Fitzgerald discussed scheduling a total joint replacement.

In April 2004, Fitzgerald requested that Dr. Hovis proceed with the joint replacement. Dr. Hovis noted in his treatment records that "[u]pon questioning, this gentleman denies any new injury.

He relates that he has had pain and difficulty with his shoulder ongoing since the time of his original treatment by me and original arthroscopy on 8/18/97."

When BTR refused to approve the joint replacement surgery, Fitzgerald filed a motion to compel medical treatment. The only evidence submitted to the trial court was the deposition testimony of Fitzgerald and the deposition testimony of Dr. Hovis, accompanied by the relevant medical records.

Dr. Hovis explained in his deposition that "[t]he need for the surgery is based on the fact that [Fitzgerald] has and is developing and is progressing with arthritic change in his shoulder." On the issue of causation, he stated:

> As far as causation, as I stated initially, the cause of arthritis is not always known. If there is a definite distinct significant injury in a previously normal individual or normal joint and then that joint becomes progressively arthritic following that, then I think we can state with certainty that it's a post-traumatic arthritis.
>
> He did relate that his work at BTR was repetitive, heavy and involved repetitive use of his arms. So in that situation it is possible that that [sic], depending on how heavy that was, that that [sic] was at least a contributing factor. Whether it was the sole causative factor or whether he was genetically predisposed with osteoarthritis of his shoulders I cannot state with certainty.
>
> I can state that he had a problem when he was working there and it has gradually worsened. He was aware of it. His work as a transporter, orderly, surgery tech or whatever, a painter at the other hospital, may be a contributor, but it's not the cause of his problem.

Upon additional questioning, Dr. Hovis reiterated that the surgery was reasonable and necessary, that Fitzgerald had suffered no specific trauma following the initial surgery in 1997, and that his current condition is related to the original condition for which he was treated in 1997. Dr. Hovis also stated that "[t]o the extent that he did heavy, repetitive, intense activities with his arms following his employment at BTR, that would more likely than not contribute to the progression of his problem." When asked if it was "reasonable to attribute his current shoulder problems to the degenerative arthritis, osteoarthritis in his shoulder that was aggravated by his original work related activities at BTR," Dr. Hovis responded that "[a]ssuming his history to be true and honest and no other contributing factors, that's a correct statement."

The Chancery Court for Blount County entered an order on October 25, 2005, requiring BTR to provide Fitzgerald with the recommended medical treatment. BTR appeals from that order, arguing that the trial court improperly shifted the burden of proof to BTR to show a new injury and that the evidence preponderates against the trial court's finding that the need for the surgery was

related to Fitzgerald's 1997 injury. We accepted review before the case was heard or considered by the Special Workers' Compensation Appeals Panel.

**Standard of Review**

Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2005); see also Rhodes v. Capital City Ins. Co., 154 S.W.3d 43, 46 (Tenn. 2004); Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 825 (Tenn. 2003). In reviewing documentary evidence such as depositions, we extend no deference to the trial court's findings. Orrick v. Bestway Trucking, Inc., 184 S.W.3d 211, 216 (Tenn. 2006). Conclusions of law are subject to de novo review without any presumption of correctness. Rhodes, 154 S.W.3d at 46; Perrin, 120 S.W.3d at 826.

**Analysis**

*A. Burden of Proof*

BTR argues that the trial court improperly shifted the burden of proof to BTR, requiring it to prove that the need for the surgery was not causally related to Fitzgerald's employment with BTR. According to BTR, the trial court required it to show that a new injury had occurred when it should have been Fitzgerald's burden to demonstrate a causal connection between the need for surgery and his original injury.

There is no evidence in the record that the trial court shifted the burden of proof to BTR. The record contains no transcript of any proceedings, and the trial court's order is silent on the issue of burden of proof. The trial court simply states that "Plaintiff Donald Fitzgerald's need for medical care was related to his work injury of May 15, 1997, and Plaintiff had not suffered a new injury subsequent to his employment with Defendant." BTR asserts that this language evinces a shifting of the burden of proof to BTR. We disagree.

*B. Causation*

In a workers' compensation action, the plaintiff has the burden of proving every element of the case by a preponderance of the evidence. See Hill v. Eagle Bend Mfg., Inc., 942 S.W.2d 483, 487 (Tenn. 1997); Tindall v. Waring Park Ass'n, 725 S.W.2d 935, 937 (Tenn. 1987). The element at issue here is that of causation. As we will discuss below, we hold that Fitzgerald has shown, by a preponderance of the evidence, that the need for shoulder surgery is related to the injury he suffered in 1997 while employed by BTR.

The trial court held that "Plaintiff Donald Fitzgerald's need for medical care was related to his work injury of May 15, 1997, and Plaintiff had not suffered a new injury subsequent to his employment with Defendant." BTR argues that the evidence does not support the trial court's

finding that the need for surgery was caused by the May 1997 injury. We disagree.

When Fitzgerald settled his workers' compensation claim with BTR in December of 1998, that settlement agreement provided that "medical benefits shall remain open to the plaintiff. Said medical care is to be obtained at the hands or direction of Dr. William M. Hovis." An employer is required to furnish the employee with such medical treatment as may be reasonably required as a result of the accident or injury. Tenn. Code Ann. § 50-6-204 (2005); see also City of Bolivar v. Jarrett, 751 S.W.2d 137, 139 (Tenn. 1988); Jackson v. Greyhound Lines, Inc., 734 S.W.2d 617, 621 (Tenn. 1987).

Causation must be established through expert medical evidence. Fritts v. Safety Nat'l Cas. Corp., 163 S.W.3d 673, 678 (Tenn. 2005). Absolute certainty in the medical evidence, however, is not required, because "expert opinion by its very nature is always more or less uncertain and speculative." Id. Therefore, any reasonable doubt must be construed in the employee's favor. Id. "Benefits may properly be awarded upon medical testimony that shows the employment 'could or might have been the cause' of the employee's injury when there is lay testimony from which causation reasonably can be inferred." Id. (quoting Clark v. Nashville Mach. Elevator Co., 129 S.W.3d 42, 47 (Tenn. 2004)).

Dr. William Hovis, Fitzgerald's treating orthopedic surgeon, was the only medical expert to testify. While Dr. Hovis could not say with absolute certainty that the need for the shoulder replacement surgery was related to the May 1997 injury, he was of the opinion that it was probably related.

In 1997, when the initial shoulder surgery was performed, the possibility of joint replacement surgery was discussed as a possible treatment to alleviate the symptoms of the arthritis, but Fitzgerald was too young at the time to consider such a surgery. Over the next few years, Fitzgerald's pain continued to increase, and x-rays showed progressing arthritic changes in the shoulder. Dr. Hovis noted that Fitzgerald's treatment options "have remained basically unchanged," and, in November 2003, Fitzgerald decided that he wanted to have the joint replacement surgery.

When asked what could have caused the increase in Fitzgerald's pain, Dr. Hovis opined that "in all probability there will be some natural progression of the problem with time regardless of the activity." He added that "*to the extent that* [Fitzgerald] did heavy, repetitive, intense activities with his arms following his employment at BTR, that would more likely than not contribute to the progression of his problem." (Emphasis added.) Dr. Hovis's testimony raises uncertainty as to causation: on the one hand, there was "probably" some natural progression of Fitzgerald's condition following the 1997 injury; on the other hand, *if* Fitzgerald was engaging in "heavy, repetitive, intense activities with his arms" during the time subsequent to his employment with BTR, those activities would have "more likely than not" contributed to the worsening of the condition.

Because the medical testimony shows that the original injury "could have" been the cause but is not more certain, the court must look for "lay testimony from which causation reasonably can

be inferred." Fritts, 163 S.W.3d at 678; see also Clark, 129 S.W.3d at 47. Fitzgerald testified that he has had no other injuries involving his shoulder since May 1997; however, the pain in his shoulder has steadily increased since that initial injury. With regard to his activities following his employment with BTR, Fitzgerald testified that, at Blount County Memorial Hospital, his job duties included moving patients and stocking supplies. The task of moving patients involved pushing patients in wheelchairs, pushing patients on gurneys, and transferring patients to and from gurneys. He testified that when lifting patients, there were usually four to five employees moving the one patient.

Considering Fitzgerald's description of his job duties at the hospital, his job did involve some heavy lifting, but the trial court could reasonably conclude that those duties did not require "heavy, repetitive, intense activities." According to Dr. Hovis, Fitzgerald's activities following his employment at BTR would have "more likely than not contribute[d] to the progression of his problem" only to the extent that they involved "heavy, repetitive, intense activities with his arms." Because Fitzgerald's post-BTR job duties did not include such activities, Dr. Hovis's opinion regarding causation is merely hypothetical. Given Dr. Hovis's testimony, along with that of Fitzgerald, we hold that the evidence supports the trial court's conclusion that the need for shoulder replacement surgery was related to Fitzgerald's 1997 injury.

## Conclusion

In sum, we hold that there is no evidence in the record that the trial court shifted the burden of proof to BTR and that Fitzgerald has shown, by a preponderance of the evidence, that his need for surgery is causally related to his 1997 injury. Therefore, we uphold the decision of the trial court compelling BTR to provide Fitzgerald with the recommended medical treatment.

Costs of this appeal are taxed to BTR Sealing Systems North America-Tennessee Operations, and its surety, for which execution may issue if necessary.

_____
WILLIAM M. BARKER, CHIEF JUSTICE