

FILED

September 16, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:13 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| Clark Rodgers, | )   Docket No.: 2015-08-0229 |
|       Employee, | ) |
| v. | )   State File No.: 35129-2015 |
| Armstrong Transfer & Storage, | ) |
|       Employer, | )   Date of Injury: April 23, 2015 |
| and | ) |
| Travelers Insurance Co., | )   Judge Jim Umsted |
|       Insurance Carrier. | ) |
| | ) |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on August 26, 2015, upon the Request for Expedited Hearing filed by Clark Rodgers, the Employee, on July 24, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Armstrong Transfer & Storage (Armstrong) is obligated to provide medical and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes Mr. Rodgers is entitled to additional medical benefits.

## ANALYSIS

### Issues

The parties marked numerous issues on the Dispute Certification Notice (DCN) issued in this claim. The Court did not decide issues marked on the DCN unless presented for determination at the Expedited Hearing. The parties presented the following issues for determination at the Expedited Hearing:

1. *Whether Mr. Rodgers sustained a compensable work-related injury to his left hand/thumb on April 23, 2015.*

1

2. *Whether Armstrong is obligated to pay for any past medical expenses or mileage expenses incurred as a result of Mr. Rodgers' alleged left-hand/thumb injury.*

3. *Whether Mr. Rodgers is entitled to additional medical care for his alleged left-hand/thumb injury, including an evaluation by an orthopedic specialist.*

4. *Whether Mr. Rodgers is entitled to past or future temporary total disability benefits, and if so, in what amount.*

## Evidence Submitted

The Court admitted into evidence the exhibits below by agreement of the parties:

Exhibit 1: Mr. Rodgers' Affidavit;
Exhibit 2: Affidavit of Leann Tate;
Exhibit 3: Affidavit of Kathy Wright;
Exhibit 4: Form C-41 Wage Statement; and
Exhibit 5: Medical records of Concentra Medical Center.

The Court designated the following as the technical record (T.R.):

- Petition for Benefit Determination (PBD), filed June 30, 2015;
- DCN, filed July 22, 2015;
- Request for Expedited Hearing, filed July 24, 2015;
- Mr. Rodgers' position statements, dated June 29, and July 20, 2015; and
- Armstrong's position statements, dated July 9, and August 17, 2105.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

Mr. Rodgers provided in-person testimony.

## Stipulations of the Parties

The parties made the following stipulations:

1. Armstrong is an employer as defined by the Tennessee Workers' Compensation Law;
2. Mr. Rodgers was an employee of Armstrong as defined by the Tennessee Workers' Compensation Law at the time of his injury;

2

3. Mr. Rodgers provided notice of his work injury on April 23, 2015;
4. Mr. Rodgers' right-leg claim has been accepted as compensable; and
5. Mr. Rodgers is authorized to return to Dr. Hayes for his right leg.

## History of Claim

Mr. Rodgers is a forty-one-year-old resident of Marshall County, Mississippi. On April 23, 2015, Mr. Rodgers injured himself while attempting to step up into his work truck. According to Mr. Rodgers, it rained that day, and he slipped as he was pulling himself up into the cab. Mr. Rodgers testified he tried to catch himself with his hands but hit his right leg on the steel step, causing a deep laceration. He immediately contacted dispatch to report his injury, and Armstrong provided a driver to take him to Concentra Medical Center[1] for treatment. Mr. Rodgers presented to Concentra on three occasions for his right-leg laceration. On May 8, 2015, Dr. Hayes released Mr. Rodgers at maximum medical improvement (MMI) and returned him to full-duty work. Dr. Hayes instructed Mr. Rodgers to return as needed with no scheduled follow-up appointments.

Mr. Rodgers returned to see Dr. Hayes on May 26, 2015. However, neither Armstrong nor its workers' compensation insurance carrier authorized that visit. During the May 26, 2015 appointment, Mr. Rodgers complained of left-hand/finger pain in addition to right-lower-leg pain. Dr. Hayes diagnosed Mr. Rodgers with a thumb contusion and sprain, and he ordered x-rays and an MRI of his left hand to rule out "gamekeepers thumb." Dr. Hayes also ordered x-rays of Mr. Rodgers' right leg. Dr. Hayes did not restrict Mr. Rodgers from any activity.

Thereafter, Mr. Rodgers followed up with Dr. Hayes again on June 2, 2015. That visit was also unauthorized. At that time, Dr. Hayes renewed his order for an MRI of Mr. Rodgers' left hand. He also noted Mr. Rodgers was concerned about pain and numbness in his anterior right-lower leg. Dr. Hayes kept Mr. Rodgers on full-duty work status and instructed Mr. Rodgers to return to the clinic in one week.

While Armstrong has accepted Mr. Rodgers' right-leg injury as compensable and stipulated Mr. Rodgers is authorized to return to Dr. Hayes for his leg, it has denied benefits for a hand or thumb injury. Mr. Rodgers filed a PBD on June 30, 2015, seeking medical benefits for his left-hand/thumb injury as well as temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed the DCN on July 22, 2015.

---

[1] Mr. Rodgers initially treated at the Concentra on Mendenhall Road but was unhappy with the care he received at that location. Thereafter, Armstrong authorized Mr. Rodgers to treat with Dr. John Hayes at the Concentra located on Airways Boulevard.

## Mr. Rodgers' Contentions

Mr. Rodgers contends that he injured his right leg as well as his left hand/thumb when he slipped getting into his work truck on April 23, 2015. He seeks medical attention from an orthopedic specialist for his leg as well as his hand, payment of past medical expenses, and temporary disability benefits from April 29, 2015, to the present. Mr. Rodgers' testimony suggests he tried to catch himself with his hands when he fell, and he advised the nurse at the Concentra on Mendenhall Road he had injured his hand as well as his leg. He admits, however, he never spoke to anyone at Armstrong about issues with his hand/thumb. Mr. Rodgers did testify he spoke to adjuster Leann Tate after his June 2, 2015 appointment to inquire about the status of the diagnostic testing ordered by Dr. Hayes, which included an MRI of his left hand.

Mr. Rodgers asserts he worked as a seasonal employee for Armstrong since the 1990s and made $13.50 an hour. According to Mr. Rodgers, he typically worked ten hours per day. He testified, however, he has not worked since April 29, 2015, and Armstrong does not provide light-duty work.

## Armstrong's Contentions

Armstrong argues the medical records admitted into evidence do not mention a hand injury until Mr. Rodgers' unauthorized visit to Dr. Hayes on May 26, 2015. According to Armstrong, Mr. Rodgers did not mention any problems with his left hand/thumb until after Dr. Hayes released him at MMI for his right leg on May 8, 2015. Moreover, Armstrong points to areas of the medical records suggesting Mr. Rodgers denied tenderness or swelling in his extremities prior to May 26, 2015. Armstrong further relies on the affidavits of Leann Tate and Kathy Wright to show Mr. Rodgers never advised Armstrong or its workers' compensation carrier of any hand injury. Consequently, Armstrong asserts Mr. Rodgers' left-hand/thumb injury did not arise out of the work-related incident that occurred on April 23, 2015.

With regard to Mr. Rodgers' request for temporary disability benefits, Armstrong maintains Mr. Rodgers has received all of the temporary disability benefits to which he is entitled. Armstrong paid temporary disability benefits for the period between April 29, 2015, and May 8, 2015.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer.

4

Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Factual Findings*

The Court finds that on April 23, 2015, Mr. Rodgers injured himself at work when he slipped while pulling himself up into the cab of his truck. Mr. Rodgers timely reported the incident to Armstrong and received authorized treatment from Concentra Medical Center from April 23, 2015, to May 8, 2015. Authorized physician, Dr. John Hayes, placed Mr. Rodgers at MMI for a right-leg injury on May 8, 2015. Thereafter, on May 26, 2015, and June 2, 2015, Mr. Rodgers sought unauthorized treatment with Dr. Hayes. During these visits, Dr. Hayes treated Mr. Rodgers not only for his right leg but also for his left hand/thumb. Dr. Hayes ordered an MRI of Mr. Rodgers' left hand to rule out "gamekeepers thumb." Armstrong refused to authorize treatment for the left hand/thumb and denied Mr. Rodgers injured his left hand/thumb at the time of his April 23, 2015 work incident.

*Application of Law to Facts*

There is no dispute Mr. Rodgers injured himself at work on April 23, 2015, and he reported the incident to Armstrong on that same date. Armstrong accepted Mr. Rodgers' right-leg claim as compensable and provided authorized treatment for the leg injury from April 23, 2015, to May 8, 2015. Moreover, Armstrong stipulated during the Expedited Hearing that Mr. Rodgers is authorized to return to Dr. Hayes for reasonable and necessary treatment of his right leg. However, Armstrong has not accepted Mr. Rodgers' alleged left-hand/thumb injury, based on its position that Mr. Rodgers did not injure his hand at the time of his April 23, 2015 work incident.

Armstrong correctly points out the medical records from Mr. Rodgers' authorized treatment at Concentra are silent with regard to any issues with his left hand/thumb. Furthermore, Mr. Rodgers admits he never advised anyone at Armstrong, or its workers' compensation insurance carrier, that he sustained an injury to his hand/thumb. However, he testified he tried to catch himself with his hands when he slipped. Mr. Rodgers also testified he advised the nurse at the first Concentra location he visited that he had injured his left hand as well as his right leg. In *Kelly v. Kelly,* 445 S.W.3d 685, 694-95 (Tenn. 2014), the Tennessee Supreme Court discussed witness credibility, holding, "The Trial Court was in the best position to determine whether [the witness] sounded calm or agitated, at ease or nervous, self-assured or hesitant, steady or stammering, confident or

defensive, forthcoming or deceitful, reasonable or argumentative, honest or biased." In this case, the Court finds that Mr. Rodgers sounded calm, at ease, self-assured, steady, confident, forthcoming, reasonable and honest. The Court, therefore, finds Mr. Rodgers to be a credible witness and finds his account of the April 23, 2015 incident believable. As such, the Court concludes it is likely Mr. Rodgers injured his left hand at the time of his April 23, 2015 work incident.

Having so found, Mr. Rodgers must still prove the injury to his left hand arose primarily out of his employment. *See* Tenn. Code Ann. § 50-6-102(13) (2014). "Injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014).

The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005).[2] An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. App. Panel 1993). Thus, the course of employment requirement focuses on the time, place and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

By contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Stated another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992). Except in "the most obvious, simple and routine cases," a workers' compensation claimant must establish by expert medical testimony that he or she is injured and that there exists a causal relationship between the injury and the claimant's employment activity. *Wheetley v. State,* No. M2013-01707-WC-R3-WC, 2014 Tenn. LEXIS 467 at *5 (Tenn. Workers' Comp. Panel June 25, 2014) (*citing Excel Polymers, LLC v. Broyles,* 302 S.W.3d 268, 274 (Tenn. 2009); *Cloyd v.*

---

[2] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4.

*Hartco Flooring Co.,* 274 S.W.3d 638, 643 (Tenn. 2008)).

Mr. Rodgers has not presented any medical proof that his left-hand/thumb injury arose primarily out of his employment. However, he also has not received an authorized evaluation of his hand to make this determination. The medical records admitted into evidence do not indicate Dr. Hayes referred Mr. Rodgers to another physician.[3] Accordingly, Dr. Hayes is Mr. Rodgers' authorized doctor for any injuries he sustained on April 23, 2015. Armstrong shall authorize Dr. Hayes to evaluate Mr. Rodgers' left hand/thumb to determine whether Mr. Rodgers sustained an injury that arose primarily out of his employment with Armstrong. Armstrong shall further provide Mr. Rodgers with medical treatment for any left-hand/thumb injury that arose primarily out of his employment with Armstrong as recommended by Dr. Hayes and as required by Tennessee Code Annotated section 50-6-204 (2014).

This Court is unable to order Armstrong to pay for Mr. Rodgers' May 26, 2015, and June 2, 2015 visits with Dr. Hayes at this time, as Mr. Rodgers presented no evidence he communicated with Armstrong or its workers' compensation insurance carrier prior to these unauthorized visits. Dr. Hayes released Mr. Rodgers from care for his right leg on May 8, 2015, and instructed him to return as needed with no scheduled follow-up appointments. During his testimony at the hearing, Mr. Rodgers indicated he spoke to adjuster Leann Tate after his June 2, 2015 appointment to inquire about the status of his diagnostic testing. The Tennessee Supreme Court has long held that the intent of Tennessee Code Annotated section 50-6-204 "is for the employee to do no less than to consult his employer before incurring expenses called for by the statute if the employee expects the employer to pay for them." *Dorris v. INA Insurance Co.,* 764 S.W.2d 538, 541 (Tenn. 1989). Consequently, Armstrong is not required to pay for these unauthorized visits.

In addition, the Court is unable to order temporary disability benefits at this time. To establish a prima facie case for temporary total disability benefits, an employee must show that: (1) he or she was totally disabled and unable to work as a result of a compensable injury; (2) a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's disability. *Gray v. Cullom Mach., Tool & Die, Inc.,* 152 S.W.3d 439, 443 (Tenn. 2004); *Hollingsworth v. S & W Pallet Co.,* 74 S.W.3d 347, 359 (Tenn. 2002); *Jewell v. Cobble Construction and Arcus Restoration,* No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015). Temporary total disability benefits are terminated when an employee is able to return to work. *Brown Shoe Co. v. Pipes,* 581 S.W.2d 140, 141 (Tenn. 1979); *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978). Temporary disability benefits also end when an employee reaches MMI. *See Cleek*

---

[3] Dr. Hayes ordered an MRI of Mr. Rodgers' left hand, which was to be performed at an outside radiology clinic. The Court does not agree with Mr. Rodgers' contention that this order was a referral to an orthopedic physician.

*v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000).

Tennessee Code Annotated section 50-6-207(2) (2014) provides for awards of temporary partial disability during the time period in which the injured employee is able to resume some gainful employment in a disabled condition, but has not reached maximum recovery. *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032 at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005); *Jewell,* 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21. This section states:

> In all cases of temporary partial disability, the compensation shall be sixty-six and two-thirds percent (66 2/3%) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition.

Tenn. Code Ann. § 50-6-207(2) (2014). To establish entitlement to temporary partial disability benefits, the employee has the burden to show he had been assigned temporary work restrictions that rendered him partially disabled, and the partial disability resulted in a reduced ability to work because the employer was unwilling or unable to return the injured worker to work at or above his average weekly wage. *Williams*, 2005 Tenn. LEXIS 1032 at *7-8. Temporary restrictions assigned by medical professionals during the employee's medical treatment do not entitle him to continued temporary disability benefits if he was able to perform work other than his former job without loss of income. *See Long v. Mid-Tennessee Ford Truck Sales*, 160 S.W.3d 504, 511 (Tenn. 2005); *Vinson v. Firestone Tire and Rubber Co.*, 655 S.W.2d 931, 933 (Tenn. 1983).

Armstrong already paid temporary disability benefits for the period between April 29, 2015, and May 8, 2015. Dr. Hayes placed Mr. Rodgers at MMI with no restrictions on May 8, 2015. When Mr. Rodgers returned to see Dr. Hayes on May 26, 2015, and June 2, 2015, Dr. Hayes kept him on full-duty work status with no restrictions. Therefore, Mr. Rodgers is not entitled to additional temporary disability benefits at this time.

Mr. Rodgers has come forward with sufficient evidence from which this Court concludes he is likely to prevail at a hearing on the merits in proving entitlement to an authorized evaluation of his left hand/thumb to determine whether he sustained an injury that arose primarily out of his employment with Armstrong.

**IT IS, THEREFORE, ORDERED** as follows:

1. Armstrong or its workers' compensation carrier shall authorize an evaluation of Mr. Rodgers' left hand/thumb with Dr. John Hayes to determine whether Mr. Rodgers sustained an injury to his left hand/thumb that arose primarily out of his employment with Armstrong. Armstrong or its workers' compensation carrier shall also provide Mr. Rodgers with medical treatment for any left-hand/thumb injury that arose primarily out of his employment with Armstrong as

recommended by Dr. Hayes and as required by Tennessee Code Annotated section 50-6-204 (2014). Mr. Rodgers or his medical providers shall furnish medical bills to Armstrong or its workers' compensation carrier.

2. This matter is set for a Scheduling Hearing on October 21, 2015, at 9:00 a.m. central time.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 16th day of September, 2015.**

**Judge Jim Umsted**
**Court of Workers' Compensation Claims**

Initial Hearing:

A Scheduling Hearing has been set with **Judge Jim Umsted, Court of Workers' Compensation Claims. You must call 615-532-9550 or toll free at 866-943-0014 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order

9

to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the

case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 16th day of September, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Clark Rodgers | | | X | rodgersclark@yahoo.com |
| Philip E. Mischke, Esq. | | | X | pmischke@farris-law.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11