**FILED**

**December 5, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 2:41 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Ted Davenport, | ) | Docket No.: 2016-06-1403 |
| Employee, | ) | |
| v. | ) | State File No.: 56614-2016 |
| Advanced Remodeling and Floor | ) | |
| Covering, LLC, | ) | Judge Kenneth M. Switzer |
| Employer. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on November 21, 2016, upon the Request for Expedited Hearing filed by Ted Davenport under Tennessee Code Annotated section 50-6-239 (2016) seeking medical and temporary disability benefits. The central legal issue is whether Mr. Davenport suffered an injury arising primarily out of and in the course and scope of his employment with Advanced Remodeling and Floor Covering, LLC. The Court holds he is likely to prevail at a hearing on the merits that he suffered a compensable injury and is entitled to medical benefits and a portion of the temporary disability benefits he requested.

### History of Claim

The testimony and exhibits established the following facts at the Expedited Hearing. Mr. Davenport, a resident of Dickson County, worked for Advanced Remodeling as a laborer installing hardwood flooring at an agreed rate of fifteen dollars per hour for forty hours per week. He testified that, on June 16, 2016, while "cutting a notch out in a vent" with a table saw with no guard, a board kicked back, causing him to accidentally catch three fingers of his left hand in the saw. Additionally, the board hit him on his right ribs. (Ex. 3 at 1.) An ambulance transported Mr. Davenport to Vanderbilt University Hospital. (Ex. 3 at 1.) Mr. Davenport introduced into evidence only the discharge instructions from this treatment, which indicate providers surgically repaired the three amputated fingers. (*See generally* Ex. 2 at 1-5.) They also excused him from work from June 16-23. *Id.* at 3.

1

After his release from the hospital, Mr. Davenport's condition worsened, prompting him to seek treatment at Horizon Medical Center on July 1. (Ex. 3 at 2.) He submitted no records of this encounter but testified providers there ultimately recommended he return to Vanderbilt. Mr. Davenport was hospitalized for eleven days. Discharge records from Vanderbilt dated July 12 indicate Mr. Davenport was treated for chest trauma and underwent a thoracotomy. *Id.* at 9, 8. The discharge notes include an excuse restricting him from all work from July 12 until July 26 and allowing a return to light duty "when no longer taking narcotic pain medications, otherwise return to work will be determined at your follow up appointment." *Id.* at 11. Mr. Davenport testified he is presently under the care of Dr. Jonathan Nesbitt at Vanderbilt, who placed him on light-duty restrictions approximately "two weeks ago," on November 7. He did not introduce medical records into evidence that document the date he was placed on light duty. Mr. Davenport is not currently working. He explained that, "In my kind of work, there is no light duty," noting that he works in construction and tree-trimming.

Mr. Davenport testified he incurred substantial medical bills for treatment, to include: 1) a statement from Dickson County EMS in the amount of $1,287.20 for transporting him to Vanderbilt on June 16; 2) $4,151.27 to Vanderbilt for the June 16, 2016 treatment; and 3) $181,789.39 to Vanderbilt for the July 1-12 surgery and hospitalization. (Exs. 4, 12, 13.)

With regard to the circumstances of his employment, according to Mr. Davenport, Advanced Remodeling is owned by Aaron Waldrum, who refused to pay for his medical care or any lost wages. (Ex. 3 at 4.) Mr. Davenport testified he came under Advanced Remodeling's employ after a face-to-face conversation with Mr. Waldrum and completion of a written employment application. Mr. Davenport asked at that time if Mr. Waldrum would withhold taxes and if Advanced Remodeling had workers' compensation insurance, to which Mr. Waldrum responded in the affirmative. Per Mr. Davenport's testimony, Mr. Waldrum picked him up to go to the jobsite, thereby controlling the hours of work; he provided all the tools and directed the work; he intended Mr. Davenport to work for him exclusively; and Mr. Davenport had no power to hire or fire other employees.

The Bureau of Workers' Compensation initially contacted Advanced Remodeling about this matter on July 26 to request that it file a First Report of Injury. (Ex. 6.) The Bureau received no response. Mr. Davenport filed a Petition for Benefit Determination on July 28. (T.R. 1.)

Afterward, the Bureau's Uninsured Employers Fund (UEF) conducted an investigation regarding whether Advanced Remodeling carried workers' compensation insurance, resulting in an Expedited Request for Investigation. (Ex. 5.) In that report dated August 18, 2016, the UEF investigator concluded there was no workers' compensation policy. *Id.* at 2. Further, Mr. Waldrum characterized Mr. Davenport as a

2

"subcontractor and that he was to have his own insurance." *Id.* at 3. The UEF investigator further concluded, "Mr. Waldrum is a Construction Service Provider and he is not on the workers comp exempt registry[.]" *Id.* at 4. The UEF investigator additionally made a "seven factors determination" as follows:

**SEVEN FACTORS DETERMINATION**

1) MR. WALDRUM SCHEDULED ALL WORKING HOURS. HE ALSO PICKED UP THE WORKER BECAUSE HE HAD NO TRANSPORTION.
2) RIGHT OF TERMINATION—MR. WALDRUM HAD THE RIGHT OF TERMINATION
3) METHOD OF PAYMENT –MR. WALDRUM NEVER PAID MR. DAVENPORT FOR HIS WORK SO WE ARE UNSURE HOW HE PAID. THE AGREEMENT WAS HOURLY WAGES.
4) FREEDOM TO SELECT AND HIRE HELPERS—MR. WALDRUM CONTROLLED.
5) FURNISHING OF TOOLS AND EQUIPMENT—MR. WALDRUM WOULD FURNISH THE TOOLS.
6) SELF-SCHEDULING OF WORKING HOURS—MR. WALDRUM WOULD SCHEDULING THE WORKING HOURS.
7) THE FREEDOM TO OFFER SERVICES TO OTHER ENTITIES—NO

*Id.* at 4-5. (Emphasis in original.)

The Bureau unsuccessfully attempted to engage Mr. Waldrum's participation in this process. The Mediator notified the parties via letter that she filed a Dispute Certification Notice (Ex. 7); Mr. Waldrum did not respond. The Clerk of Court sent a Notice of Expedited Hearing (T.R. 4); Mr. Waldrum filed nothing in response. The Clerk emailed Mr. Waldrum to request dates of his availability for an expedited hearing, to which he responded via email, "I am no longer in business for myself. I have a work schedule with a company I work for and just started so if I take off I may loose [sic] my job. I'm broke. So I can't pay his bills for him." (Ex. 8.) The Clerk subsequently sent an email requesting that the parties confirm they received the Notice of Expedited Hearing (Ex. 9); Mr. Waldrum did not reply. As a final attempt, the Clerk resent the hearing notice via FedEx overnight, which was delivered in advance of the hearing. (Exs. 10, 11.) Mr. Waldrum did not appear at the Expedited Hearing, where Mr. Davenport requested an Order requiring Advanced Remodeling to provide medical and temporary disability benefits.

**Findings of Fact and Conclusions of Law**

In order to grant the relief Mr. Davenport seeks, the Court must apply the following legal principles. Mr. Davenport bears the burden of proof on all prima facie elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2016); *see also Buchanan v. Carlex Glass Co.*, No. 2016-01-0012, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2016). He need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App.

Bd. Mar. 27, 2016). At an expedited hearing, Mr. Davenport has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *Id.*

As an initial matter, the Court holds Advanced Remodeling received adequate notice of Mr. Davenport's claim and these proceedings. The Bureau made numerous attempts to contact Mr. Waldrum, who apparently serves as Advanced Remodeling's sole principal. The Court finds the only instance Mr. Waldrum responded regarding this case was the October 23 email to the Court Clerk. In that communication, he neither denied ownership of Advanced Remodeling nor that Mr. Davenport suffered injury while under Advanced Remodeling's employ. Rather, he conveyed he could not attend a hearing due to his employment and he was "broke" and unable to pay Mr. Davenport's bills.

As for the relationship between Mr. Davenport and Advanced Remodeling, the Tennessee Workers' Compensation Act provides:

> In a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors shall be considered:
> *(a)*   The right to control the conduct of the work;
> *(b)*   The right of termination;
> *(c)*   The method of payment;
> *(d)*   The freedom to select and hire helpers;
> *(e)*   The furnishing of tools and equipment;
> *(f)*   Self-scheduling of working hours; and
> *(g)*   The freedom to offer services to other entities.

Tenn. Code Ann. § 50-6-102(12)(D)(i) (2016).

Based upon Mr. Davenport's uncontroverted testimony at the Expedited Hearing, as well as the UEF investigator's findings, the Court holds he was an employee of Advanced Remodeling rather than a subcontractor or independent contractor. Advanced Remodeling, through Mr. Waldrum, hired him after he completed a written application, the typical means by which employment is sought. Mr. Davenport performed work at an hourly wage, for a forty-hour work week, which precluded other employment. Advanced Remodeling provided the tools, set the work hours and did all hiring and firing. It appears Advanced Remodeling and Mr. Waldrum controlled all aspects of the worksite. The Court further finds, based upon the UEF investigator's findings, that Advanced Remodeling is a construction services provider as generally defined in Tennessee Code Annotated section 50-6-901(5) and that it failed to secure workers' compensation insurance as required by section 50-6-902(a).

With regard to the compensability of Mr. Davenport's claim, the Workers'

4

Compensation Law defines an "injury" as "an injury by accident . . . arising primarily out of and in the course and scope of employment that causes . . . the need for medical treatment." Tenn. Code Ann. § 50-6-102(14) (2016). Further, an injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14)(A) (2016). Arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005).

Here, Mr. Davenport's undisputed testimony proves that, while under Advanced Remodeling's employ on June 16, he injured his hand and ribs, resulting in the need to surgically repair three amputated fingers and to later undergo a thoracotomy for chest trauma. While the medical records introduced at the hearing are scant, they nonetheless bolster his account of how he became injured, and he presented as an honest and credible witness. Accordingly, the Court holds Mr. Davenport is likely to pevail at a hearing on the merits that he sustained an accidental injury caused by a specific incident arising primarily out of and in the course and scope of his employment.

*Requested Relief*

Turning first to the medical benefits Mr. Davenport seeks, the Court holds that, under Tennessee Code Annotated section 50-6-204(a)(1)(A) (2016), Advanced Remodeling must provide him with past and continuing reasonable and necessary medical treatment related to the injury. The Court appoints Dr. Nesbitt as the authorized treating physician. The Court further finds treatment with Vanderbilt, Horizon Medical Center and Dr. Nesbitt appropriate because Advanced Remodeling failed to provide Mr. Davenport medical care, which required him to seek treatment on his own. *See Young v. Young Electric*, No. 2016-06-0860, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (Tenn. Workers' Comp. App. Bd. May 25, 2016). The Court likewise holds Advanced Remodeling is responsible for payment of the Dickson County EMS bill for transportation to Vanderbilt on June 16 as well as sums owed to Horizon Medical Center, Dr. Nesbitt and Vanderbilt.

Next, Mr. Davenport seeks temporary disability benefits. In *Jones v. Crencor,* No. 2016-06-0332, 2016 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2016), the Appeals Board, citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978), held: "An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." Temporary total disability

benefits are calculated at a rate of sixty-six and two-thirds percent of the employee's average weekly wages. Tenn. Code Ann. § 50-6-207(1)(A) (2016).

Here, the Court finds Mr. Davenport became totally disabled at work due to a compensable injury and a causal connection exists between the injury and his inability to work. With regard to the remaining factor for consideration, the duration of disability, Mr. Davenport introduced medical records into evidence excusing him from work from June 16-23 (eight days). He credibly testified he returned to Vanderbilt on July 1 for inpatient treatment until July 12, which records additionally excuse him from work from July 12-26 (twenty-six days). Accordingly, the Court concludes that at this time, Mr. Davenport satisfied all the criteria from *Jones* and is likely to prevail at a hearing on the merits regarding his entitlement to temporary total disability benefits for these two timeframes. At the fifteen-dollar hourly wage for a forty-hour work week, Mr. Davenport's average weekly wage is $600, so that his compensation rate is $400 per week, or $57.14 per day. Advanced Remodeling is obligated to pay him thirty-four days of disability benefits totaling $1,942.84.

As for his status beyond those dates, Mr. Davenport contended he was totally disabled until November 7, 2016, when Dr. Nesbitt implemented light-duty restrictions. However, he failed to submit any medical evidence to support this claim. Although the Court finds him credible, Mr. Davenport's testimony alone is an insufficient basis to establish the duration of disability for that time period. Mr. Davenport may obtain additional medical records documenting the restrictions. Should he do so, he may file copies of the records along with another Request for Expedited Hearing, indicating that the Court may revisit the issue as a review of the file rather than conducting an in-person evidentiary hearing.[1]

Finally, although this Court holds Advanced Remodeling must provide Mr. Davenport with past and ongoing medical benefits as well as past temporary total disability benefits, it is unclear whether payment will be forthcoming, as Advanced Remodeling did not have workers' compensation insurance at the time of the accident, nor has Mr. Waldrum made any effort to participate in this case. Under Tennessee Code Annotated section 50-6-802(e)(1) (2016), the Bureau has discretion to pay limited temporary disability and medical benefits to employees who have established medical causation of their injuries and meet the following criteria:

(1) The employee worked for an employer who failed to carry workers' compensation insurance;

(2) The employee suffered an injury primarily arising in the course and

---

[1] Mr. Davenport filed a letter on November 30, 2016, from Karen Pinkard, RN, BSN, indicating that he underwent surgery on September 19, 2016, and had a post-operative appointment on November 8, 2016. Because the letter was not admitted into evidence at the Expedited Hearing, the Court cannot consider it at this time. The Court notes that the letter is insufficient to establish the duration of disability after July 26, 2016.

scope of employment after July 1, 2016;

(3) The employee was a Tennessee resident on the date of the injury; and

(4) The employee provided notice to the Bureau of the injury and the employer's failure to provide workers' compensation insurance no more than sixty days after the injury occurred.

Tenn. Code Ann. § 50-6-801(d)(1)-(4) (2016).

Based upon the evidence, the Court holds Mr. Davenport was a Tennessee resident on June 16 and was an employee of Advanced Remodeling on that date for purposes of the Tennessee Workers' Compensation Law. As of June 16, Advanced Remodeling failed to secure insurance for payment of workers' compensation benefits. Mr. Davenport came forward with sufficient evidence for the Court to find he is likely to prevail at a hearing on the merits in proving that he suffered an injury after July 1, 2016, primarily within the course and scope of employment. At that time, Advanced Remodeling failed to provide workers' compensation insurance and likewise has paid no medical or temporary disability benefits. Further, Mr. Davenport provided notice to the Bureau of the injury and of the failure of the employer to secure the payment of compensation on July 28, within sixty days after the date of injury. Accordingly, the Court concludes he is eligible to receive medical and past temporary total disability benefits from the Uninsured Employers Fund.

**IT IS, THEREFORE, ORDERED** as follows:

1. Advanced Remodeling shall pay for past and ongoing medical care for Mr. Davenport's injuries, including the sums owed to Dickson County EMS, Horizon Medical Center and Vanderbilt. Dr. Jonathan Nesbitt shall continue to serve as the authorized treating physician. Mr. Davenport or the medical providers shall furnish any other reasonable, necessary and related bills to Advanced Remodeling for prompt payment.

2. Mr. Davenport is entitled to past temporary total disability payments in the amount of $1,942.84, payable immediately as a lump sum.

3. Mr. Davenport is eligible to receive medical and temporary disability benefits from the Uninsured Employers Fund under Tennessee Code Annotated section 50-6-801, *et seq.*

4. This matter is set for a Scheduling Hearing on January 24, 2017, at 9:30 a.m. Central Time.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry

7

of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Penalty Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED this the 5th day of December, 2016.**

**Judge Kenneth M. Switzer**
**Court of Workers' Compensation Claims**

Scheduling Hearing:

A Scheduling Hearing has been set with Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. The parties must call 615-532-9552 or 866-943-0025 toll-free to participate in the hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing

fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Ted Davenport
2. Partial medical records, Vanderbilt University Hospital
3. Written statement of Erica Davenport and witness list
4. Statement, Dickson County EMS
5. Expedited Request for Investigation Report
6. Letter from Mediator requesting First Report of Injury
7. Letter from Mediator notifying parties of filing of Dispute Certification Notice
8. Email exchange between the Court Clerk and Mr. Waldrum, October 21-23, 2016
9. Email from the Court Clerk to the parties to confirm receipt of hearing notice, November 17, 2016
10. FedEx proof of overnight mailing
11. FedEx proof of delivery
12. VUMC letter, total charges for June 16, 2016 outpatient treatment
13. VUMC letter, total charges for July 1-12 hospitalization

Technical Record:[2]
1. Petition for Benefit Determination, July 28, 2016
2. Dispute Certification Notice, September 20, 2016
3. Request for Expedited Hearing, October 19, 2016
4. Notice of Expedited Hearing, November 2, 2016

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 5th day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Ted Davenport, Self-Represented Employee | | | X | Teddavenport33@gmail.com |
| Advanced Remodeling/Aaron Waldrum, Self-Represented Employer | X | | X | Advancedremodel2016@gmail.com; 1619 Hill Street, White Bluff TN 37187 |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov

11