FILED

January 31, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 11:47 AM



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | |
|---|---|
| **Samuel Panzarella,** ) | **Docket No.: 2015-01-0383** |
| **Employee,** ) | |
| ) | **State File No.: 79681 2015** |
| **v.** ) | |
| ) | **Judge: Audrey A. Headrick** |
| **Amazon.com, Inc.,** ) | |
| **Employer.** ) | |
| ) | |

## COMPENSATION HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge upon remand from the Tennessee Workers' Compensation Appeals Board. The Appeals Board issued an order on January 18, 2017, vacating and remanding this Court's November 23, 2016 order, which ordered medical and temporary disability benefits and treated the October 28 trial as an expedited hearing instead of a compensation hearing. In its January 18 order, this Court concluded that the issue of whether Mr. Panzarella was entitled to permanent partial disability benefits was not ripe for a decision. The Appeals Board remanded the case to this Court to treat the proceeding as a trial on the merits and to determine the benefits, if any, due to Mr. Panzarella based upon the evidence presented at trial.[1] After doing so, this Court finds Mr. Panzarella did not establish by a preponderance of the evidence that he sustained a compensable injury.

### History of Claim

This case involves an incident that occurred on August 21, 2015, while Mr. Panzarella performed a packing job at Amazon. Mr. Panzarella testified he ran out of labels at his workstation and walked to another station to get more. As he was walking, he saw a piece of paper lying on the floor. Mr. Panzarella's undisputed testimony was

---

[1] For expedited hearings, a judge may award medical and/or temporary disability benefits upon finding that the employee is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2016). At a compensation hearing, a trial on the merits, the employee must prove each element of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(d)(1) (2016).

that Amazon requires its employees to pick up any paper lying on the floor, and to do so by bending at his knees, holding the item to the center of one's body, and standing back up. As Mr. Panzarella squatted to pick the paper up from the floor, his left knee "went out" and he hit the knee on the floor when he fell. When Mr. Panzarella stood up, he stated he felt intense pain behind his left knee.

After his fall, Mr. Panzarella went to AmCare, Amazon's on-site medical clinic. Mr. Panzarella stated that, while walking to AmCare, his left knee "gave way" and he fell again. The provider at AmCare provided him with a Non-Occupational Complaint Report to complete, which instructed him to describe the reason for his visit at AmCare. (Ex. 6.) Mr. Panzarella wrote, "muscle spasm in calf [illegible] radiate to behind knee caused loss of balance 2 times" with a date of onset as "8-21-15." *Id.* He indicated on the form that this was a new complaint and testified he had no problems or treatment for his left knee prior to his fall on August 21. Mr. Panzarella stated the AmCare provider did not want to complete the necessary documents to send him to the emergency room, so he told the provider he would see his doctor after work. The typed form completed by the AmCare provider classified the injury as "non-work related" and noted that Mr. Panzarella "chose to see his PCP about it and will do so soon if the spasms persist." *Id.* Amazon did not offer Mr. Panzarella a panel of physicians.

After his shift was over, Mr. Panzarella saw Jill Yeager, a physician's assistant (PA) at Fast Access Healthcare. (Ex. 2.) He gave a history of having "chronic pain in R ankle, compensating on L leg & caused a fall onto L knee." *Id.* Mr. Panzarella testified he had chronic right ankle pain from standing ten hours per night. PA Yeager's office note indicated Mr. Panzarella's leg buckled, causing him to fall to the floor.

Mr. Panzarella returned to Amazon right after he saw PA Yeager. He stated Nic Elliott, Human Resource Assistant, presented him with a Request for Medical Information Letter (RMI). (Ex. 7.) The RMI letter required him to have his healthcare provider complete the RMI form. Mr. Panzarella continued treatment with PA Yeager, who completed Amazon's RMI form and marked "undetermined" on the form regarding work-relatedness. *Id.* The following month, PA Yeager completed an Attending Physician's Statement of Work Capacity and Impairment and checked "yes" when asked if Mr. Panzarella's left knee condition was "due to injury or illness arising out of the patient's employment." *Id.*

PA Yeager subsequently ordered a left-knee MRI and referred Mr. Panzarella to see an orthopedic surgeon. Amazon later offered Mr. Panzarella a panel of physicians from which he selected Dr. Barry Vaughn. On the one occasion when Mr. Panzarella saw Dr. Vaughn, he reported the following history:

> Patient reports leaning forward to pick up a piece of paper at work. When he twisted his left knee, he felt a tearing sensation in the posteromedial

aspect. His knee then gave way and he fell onto the knee applying a valgus stress to the knee. He has had left knee pain with swelling, popping and giving way since the injury.

(Ex. 3.) Dr. Vaughn reviewed Mr. Panzarella's MRI and x-rays and performed a physical examination. He diagnosed Mr. Panzarella with medial meniscus derangement, medial collateral ligament (MCL) sprain, and anterior cruciate ligament (ACL) sprain. Dr. Vaughn recommended surgery for the meniscus tear followed by physical therapy.

Dr. Vaughn testified regarding Mr. Panzarella's meniscus tear. He stated Mr. Panzarella did not indicate to him that his right ankle had anything to do with his left knee giving out. Dr. Vaughn explained that a meniscus tear is usually caused by a twisting-type injury. He confirmed Mr. Panzarella reported to him that his left knee twisted before he fell onto it. Dr. Vaughn stated his diagnosis of a meniscus tear is consistent with the type of injury reported by Mr. Panzarella. Once he fell onto his knee, Dr. Vaughn suspected it likely caused his ACL and MCL sprains. When asked if the injury occurred at work, Dr. Vaughn replied that Mr. Panzarella's description is that it occurred at work and PA Yeager's report documented he had a swollen knee when he reported his injury to her.

During cross-examination, counsel questioned Dr. Vaughn regarding the cause of Mr. Panzarella's fall. The following dialogue occurred:

Q: And again, according to the history he gave you, there was no hazard on the floor or in his work environment that caused him to have this muscle cramp and his knee or leg to give way, was there?

A: Other than picking up the piece of paper, no.

Q: And his knee or leg could have given out and he could have developed this cramp whether he was at work or anywhere else doing this maneuver, couldn't he?

A: Correct.

Q: And Mr. Panzarella is overweight; correct?

A: Correct.

Q: Could that be a factor in him losing his balance and falling when bending over?

A: It can be, yes.

*Id.*

Counsel also questioned Dr. Vaughn regarding the act of bending over in relation to Mr. Panzarella's knee or leg giving way. When asked whether Mr. Panzarella's knee would have gone out when it did if he had not bent over to pick up the paper, he responded, "no." *Id.* Under cross-examination, Dr. Vaughn explained, "[i]t kind of depends on the position that he put himself in to retrieve the paper . . . I mean, basically, it depends on how the action was performed." *Id.* Counsel asked, "[s]o it would depend on the action as opposed to whether or not there was a piece of paper in the floor or he was bending down to tie his shoes; correct?" *Id.* Dr. Vaughn responded, "[c]ertainly the action is what's responsible, correct." *Id.*

Dr. Vaughn confirmed that Mr. Panzarella is not yet at maximum medical improvement. Other than the one-time visit with Dr. Vaughn, Amazon has not authorized any other treatment. It argues that Mr. Panzarella is not entitled to any benefits under the Workers' Compensation Law because he suffered an idiopathic injury and provided no medical proof of a hazard incident to his employment.

## Evidentiary Ruling

During Dr. Vaughn's deposition, Mr. Panzarella's counsel made an evidentiary objection. Counsel for Amazon posed the following 98-word question to Dr. Vaughn:

> Q: I was going to say that if we were to assume that in order for Mr. Panzarella's injury to arise out of his employment, the maneuver of bending down to pick up the piece of paper and the development of the muscle cramp, or whatever caused his leg or knee to give way, needs to have been caused by a hazard or a danger peculiar to his work environment or be caused by some kind of risk inherent in his employment, if you were to assume that, would you agree his injury doesn't arise out of his employment?
>
> A: If you make that assumption, I suppose so, yes.

*Id.*

Counsel for Mr. Panzarella objected twice as to form on the basis that the question required Dr. Vaughn to provide a legal opinion. The Court agrees. The question is lengthy, confusing, and appears to ask Dr. Vaughn to provide a legal opinion. Although it is undisputed that Dr. Vaughn is qualified as a medical expert, he is not qualified to provide a legal opinion. Accordingly, the Court sustains the objection.

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Mr. Panzarella has the burden of proof on all essential elements of his claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS *42, at *18 (Nov. 9, 2015); see also Tenn. Code Ann. § 50-6-239(c)(6) (2016). Stated another way, preponderance of the evidence simply means more likely than not.

Since Amazon contests the compensability of Mr. Panzarella's claim, the Court applies the following specific legal principles. For his injury to be compensable, Mr. Panzarella must show his injury arose "primarily" out of and in the course and scope of his employment at Amazon. Tenn. Code Ann. § 50-6-102(14) (2016). The course of employment requirement refers to the time, place, and circumstances of the injury. *Hill v. Eagle Bend Mfg., Inc.*, 942 S.W.2d 483, 487 (Tenn. 1997). However, the arising out of employment requirement refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005).

The legal analysis does not stop there. Mr. Panzarella must show, "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." The legislature defined "[s]hown to a reasonable degree of medical certainty" to mean the physician must opine "it is more likely than not considering all causes, as opposed to speculation or possibility." Further, as the panel physician, Dr. Vaughn's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14) (2016).

Applying these principles to the facts of this case, the Court finds Mr. Panzarella has not met his burden and is not entitled to the requested benefits. As the Appeals Board has reiterated in *Dugger v. Home Health Care of Middle TN, LLC, et al.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 13, at *9-10 (March 16, 2016):

> "The mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." (Citation omitted). Accordingly, "an injury purely coincidental, or contemporaneous, or collateral, with the employment, . . . will not cause

the injury . . . to be considered as arising out of the employment." (Citation omitted).

In this Court's November 23, 2016 order, which the Appeals Board vacated and remanded, the Court applied a different evidentiary standard because it considered the matter as one presented to the Court in an Expedited Hearing. Specifically, the Court did not find Amazon's idiopathic injury defense persuasive and held that Mr. Panzarella was "likely to prevail at a hearing on the merits in establishing that his injury arose primarily from a hazard incident to his employment at Amazon." When applying this lesser evidentiary standard, the Court interpreted the proof differently than it would have had it applied the "preponderance of the evidence" standard the Court is required to apply during a Compensation Hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *16, 17 (Mar. 27, 2015). When interpreting and analyzing the proof under the preponderance of the evidentiary standard, the Court finds Mr. Panzarella failed to establish the compensability of his claim.

Under the preponderance of the evidence standard, the Court holds that Mr. Panzarella failed to meet his burden of establishing that his right knee condition arose primarily out of his employment. Dr. Vaughn never opined that Mr. Panzarella's knee injury arose "primarily" out of his employment. Instead, he agreed that Mr. Panzarella's knee could have given out and developed a cramp whether he was at work or elsewhere. (Ex. 4.) Dr. Vaughn explained that the action of bending over was responsible for Mr. Panzarella's knee giving way. He also acknowledged that another factor that could cause Mr. Panzarella to lose his balance and fall when bending over is the fact that he is overweight. *Id.* Yet another factor that could cause Mr. Panzarella to lose his balance and fall is the history he provided to PA Yeager immediately following his injury. Her records reflect that Mr. Panzarella complained of having "chronic pain in R ankle, compensating on L leg & caused a fall onto L knee." (Ex. 2.)

Accordingly, after careful consideration of the evidence as a whole, this Court concludes Mr. Panzarella failed to establish, by a preponderance of the evidence, his left knee condition arose primarily out of and in the course or scope of his employment with Amazon. In light of the Court's holding, Mr. Panzarella's request for medical benefits, temporary disability benefits, and permanent disability benefits is denied.

Because Mr. Panzarella failed to present sufficient evidence to establish that his left knee condition arose primarily out of and in the course and scope of his employment, the idiopathic defense raised by Amazon is pretermitted.

This Court taxes the court costs of $150.00 to Amazon pursuant to Tennessee Compilation Rules and Regulations Rule 0800-02-21-.07 (2016). Further, Amazon shall prepare and submit a Statistical Data Form for this matter within ten calendar days of the date of judgment.

IT IS, THEREFORE, ORDERED that the claim of Mr. Panzarella against Amazon or its workers' compensation carrier is denied.

IT IS SO ORDERED.

**ENTERED this the 31st day of January, 2017.**

_Audrey Headrick_

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

# APPENDIX

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Initial Hearing
4. Agreed Order Setting Case for Expedited Hearing
5. Notice of Filing Notice of Denial
6. Notice of Filing of Medical Records from Physicians Quality Care
7. Motion for Status Conference
8. Order Setting Initial Hearing
9. Initial Hearing Order
10. Motion for Conference
11. Statement Concerning Up to Date Medical Records
12. Notice of Filing Medical Reports from Parkridge East Hospital
13. Amended Petition for Benefit Determination
14. Order Amending Initial Hearing Order
15. Dispute Certification Notice
16. Amazon's Pre-Hearing Statement
17. Order Cancelling and Resetting Compensation Hearing
18. Notice of Compensation Hearing
19. Mr. Panzarella's Pre-Compensation Hearing Statement
20. Amazon's Hearing Brief
21. Mr. Panzarella's Trial Brief

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:

1. MRI and x-rays from Chattanooga Imaging
2. Medical records of Fast Access Healthcare
3. Medical records of Dr. Barry Vaughn
4. Deposition of Dr. Vaughn
5. Medical records of Parkridge East Hospital
6. Non-Occupational Complaint Report
7. Request for medical information letter from Amazon

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 31st day of January, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|---------------|------------------|---------|-----------|-----------|---------------|
| Bob Wharton | | | | | X | wharton@hjwlawfirm.com |
| Kristen Stevenson | | | | | X | kcstevenson@mijs.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov