**FILED**

**December 12, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 2:58 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | | |
|---|---|---|
| **Derrick Price,** | ) | **Docket No.: 2016-02-0423** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 619754-2016** |
| **Bobby Chambers** | ) | |
| **d/b/a C&C Contractor,** | ) | **Judge Brian K. Addington** |
| **Employer.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on December 5, 2016, upon the Request for Expedited Hearing filed by Derrick Price under Tennessee Code Annotated section 50-6-239 (2016) seeking medical and temporary disability benefits. The central legal issues are whether Mr. Price was an employee of Bobby Chambers and whether he suffered an injury arising primarily out of and in the course and scope of his employment. The Court holds Mr. Price has not come forward with sufficient evidence to establish he is likely to prevail at a hearing on the merits. Therefore, he is not entitled to the requested medical and temporary disability benefits.

### History of Claim

The testimony and exhibits presented at the Expedited Hearing established the following facts:

Mr. Price, a resident of Cocke County, Tennessee, has worked in the construction trade for most of his work life, providing roofing and other construction services. Mr. Price has never owned his own business or hired workers. He often learned of other opportunities for work while at a jobsite, as several construction workers he knew often worked the same jobs. Mr. Price testified he became acquainted with Mr. Chambers a few years prior to the alleged accident when introduced by Sherman Ball, a contractor. Mr. Price floated between working with Mr. Ball and Mr. Chambers, performing construction tasks.

1

Although Mr. Chambers testified he at one time secured workers' compensation insurance for himself, he later filed for and obtained an exemption through the Workers' Compensation Exemption Registry because he did not have any employees. Mr. Chambers has never obtained a Tennessee contractor's license.

The parties provided testimony describing their working relationship. On occasion, Mr. Chambers would lead a work crew. He would obtain a job from a client and ask other skilled construction workers to assist him, if he could not perform the work alone. Mr. Chambers and Mr. Price testified that they both earned $18.00 per hour when they worked jobsites together. However, Mr. Chambers testified that, at times, Mr. Price would tell Mr. Chambers he would do a job for a certain amount of money. Mr. Price did not work a regular work schedule but would contact Mr. Chambers for available work whenever he needed money. If he had a job available, Mr. Chambers would call Mr. Price the night before work to tell him where to meet. Sometimes Mr. Price drove himself to the work sites; sometimes Mr. Chambers drove him. Mr. Price had his own tools, but would also use Mr. Chambers' and other workers' tools.

The parties worked on several jobs over a two-year period, but there were long periods of time during which Mr. Price did not work with Mr. Chambers. Mr. Price was under no obligation to come to work for Mr. Chambers. The week before the alleged incident, the parties worked together on a roofing job for an attorney. Mr. Price contacted Mr. Chambers about available work because he needed money to pay on a truck loan obligation. This was not a job that Mr. Chambers had contracted. Rather, a man named Ronnie Chapman had contracted the job. Mr. Price's skills were needed, so he joined the work crew.

Mr. Chambers did not keep track of Mr. Price's work hours. Mr. Price reported the hours he worked, and Mr. Chambers would pay him cash at the rate of $18.00 per hour. Mr. Chambers did not keep records of what he paid the work crew and did not issue 1099s.

The parties gave conflicting testimony concerning the work accident in question, so the Court will separate their testimony.

*Mr. Price's Version of Events*

Mr. Price testified he started work on a campground project Mr. Chambers secured on Tuesday, July 19, 2016. Mr. Chambers picked him up at home and drove him to the worksite. He worked along with Mr. Chambers, Mr. Nelson Torres, and Mr. Torres' son, Bryan. The men constructed a roof over a fifth-wheel trailer, setting posts and trusses while working from an elevated metal walk board.

On Wednesday, July 20, 2016, Mr. Chambers again picked Mr. Price up from

2

home and drove to the worksite. They completed the supports and trusses and started putting on wooden slats when they broke for lunch. Mr. Price, Mr. Torres, and his son ate lunch, while Mr. Chambers drove to Lowe's to buy supplies. Following lunch, Mr. Price and Mr. Torres stood on the metal walk board and nailed fascia boards. Suddenly, the metal walkway gave way, and Mr. Price and Mr. Torres fell six or seven feet to the ground. Mr. Torres was fine, but Mr. Price was numb in his lower back and could hardly move. Mr. Chambers told him to walk off the injury. Mr. Price told Mr. Chambers he was injured and needed to go home. He asked Bryan Torres to drive him to meet his girlfriend at a nearby store.

### Mr. Chambers' Version of Events

Mr. Chambers testified that the owner of the fifth-wheel trailer contacted him about building the roof for his fifth-wheel camper. The men met, and Mr. Chambers examined the trailer and the work-site. Mr. Chambers agreed to do the job on an hourly-pay basis. He could not do the work alone, so he asked Mr. Torres and Mr. Price to work with him.

According to Mr. Chambers, Mr. Price did not work with him and Mr. Torres on July 19, 2016, but only worked on July 20, and then for only half a day. Mr. Chambers added that Mr. Price's vehicle was not working, so Mr. Price would not have been able to get to the jobsite but for Mr. Chambers giving him a ride to work on July 20. The men performed their work while standing either on the camper, its porch, or on the erected posts. Mr. Chambers testified that, in fact, there was no metal walkway from which anyone could fall. The workday proceeded as normal until after lunch, at which time Mr. Price approached him and told him he needed to go home because he was feeling ill. Mr. Price left with Mr. Torres' son. Mr. Chambers did not see Mr. Price fall. He did not notice that Mr. Price exhibited any difficulty leaving the work site.

### Mr. Torres' Version of Events

Mr. Torres worked with Mr. Chambers at the campground project on July 19, 2016. According to Mr. Torres' testimony, Mr. Price did not work with them that day, but only on July 20, 2016. The July 20 workday progressed as normal until lunchtime. There was no scaffolding on the worksite. The workers used ladders to access the roof. Mr. Torres and Mr. Price nailed fascia boards together, when Mr. Price reported feeling ill and left the jobsite with Mr. Torres' son.

### Post-Accident Events and Medical Treatment

Mr. Price testified he went to Newport Hospital later in the day on July 20, 2016, where he was diagnosed with an acute thoracic spine compression fracture at level T12 and a moderate, comminuted compression fracture at L3. (Ex. 2 at 1, 3.) He was then

taken by ambulance to UT Medical Center. (Ex. 3 at 1.) The providers there gave him a brace and recommended an orthopedic consultation. *Id.* at 8.

On July 21, 2016, Mr. Chambers went to Mr. Price's home and delivered the pay Mr. Price was entitled to for the previous day's work. Mr. Price and Mr. Chambers did not speak that day. Later, Mr. Price requested that Mr. Chambers bring his tools by his home, because he needed to work on the bathroom. Mr. Chambers dropped off the tools.

Mr. Chambers testified that sometime after he dropped off the money he owed Mr. Price, he observed Mr. Price at East Tennessee Metal climbing a trailer, unhooking straps, and jumping off the trailer, twice.

Mr. Price treated with orthopedic surgeon, Dr. Michael Eilerman, beginning on August 3, 2016. Dr. Eilerman treated Mr. Price conservatively, ordering continued use of the back brace and prescription pain medication. (Ex. 4 at 2-4.) On August 31, 2016, Dr. Eilerman recommended physical therapy. He also took Mr. Price off work until October 10, 2016. *Id.* at 5-9.

Mr. Price presented to the emergency room at Newport Medical Center on September 19, 2016, with chronic back pain that he attributed to a fall two months prior. (Ex. 5.) He was given pain medication prescriptions. *Id.*

Mr. Price filed a Petition for Benefit Determination on August 15, 2016. (T.R. 1.) In light of the reported injury, the Bureau's Uninsured Employers Fund (UEF) conducted an investigation regarding whether Mr. Chambers carried workers' compensation insurance, resulting in an Expedited Request for Investigation. (Ex. 1.) The resulting report was prepared by UEF Compliance Specialist Rene Gallardo on August 26, 2016. Specialist Gallardo concluded Mr. Chambers, whom he described as a "roofer," had no workers' compensation insurance policy in effect on July 20, 2016. *Id.* at 1. He further concluded, "Mr. Chambers is on Exemption Registry."[1] *Id.* Specialist Gallardo additionally made a "seven factors determination" as follows:

---

[1] In other words, Mr. Chambers would be obligated to provide workers' compensation coverage to an employee, but he was exempt from having coverage for himself.

4

<u>SEVEN FACTORS DETERMINATION</u>

1) **BOBBY CHAMBERS DETERMINES THE SCOPE OF WORK**

2) **RIGHT OF TERMINATION—CONTROLLED BY INJURED WORKER.**

3) **METHOD OF PAYMENT - PAID HOURLY VIA CASH**

4) **FREEDOM TO SELECT AND HIRE HELPERS—CONTROLLED BY IW**

5) **FURNISHING OF TOOLS AND EQUIPMENT—MR. CHAMBERS PROVIDED ALL NECESSARY TOOLS FOR WORK**

6) **SELF-SCHEDULING OF WORKING HOURS—MR. CHAMBERS DETERMINED SCHEDULE**

7) **THE FREEDOM TO OFFER SERVICES TO OTHER ENTITIES--YES**

*Id.* at 4. (Emphasis in original).

The Bureau mediator assigned to the case was unable to resolve the parties' differences and issued a Dispute Certification Notice on October 3, 2016. (T.R. 2.) Mr. Price filed a Request for Expedited Hearing on November 2, 2016. (T.R. 3.) This matter was set for an Expedited Hearing on December 5, 2016. Mr. Chambers filed a Motion for Continuance on December 1, 2016. (T.R. 4.) Mr. Price filed a Response opposing the Motion. (T.R. 5.) The Court denied the Motion, and the hearing occurred as scheduled. (T.R. 6.)

During the hearing, Mr. Price contended Mr. Chambers should be held responsible for his injury, as he was Mr. Chambers' employee. He fell at work from a metal walk board and suffered compression fractures to his thoracic spine. He testified he hurt all the time and experienced numbness. He has not worked since July 20, 2016.

Mr. Chambers asserted Mr. Price was not his employee, and that even if Mr. Price were his employee, he did not suffer an injury on July 20, 2016, as he alleged. Mr. Chambers' witness, Mr. Torres, confirmed Mr. Price was not injured at work on the date in question.

**Findings of Fact and Conclusions of Law**

In order to grant the relief Mr. Price seeks, the Court must apply the following legal principles. Mr. Price bears the burden of proof on all prima facie elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2016); *see also Buchanan v. Carlex Glass Co.*, No. 2016-01-0012, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2016). He need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd.

5

Mar. 27, 2016). At an expedited hearing, Mr. Price has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *Id.*

As for the relationship between Mr. Price and Mr. Chambers, the Tennessee Workers' Compensation Act provides:

> In a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors shall be considered:
> *(a)*     The right to control the conduct of the work;
> *(b)*     The right of termination;
> *(c)*     The method of payment;
> *(d)*     The freedom to select and hire helpers;
> *(e)*     The furnishing of tools and equipment;
> *(f)*     Self-scheduling of working hours; and
> *(g)*     The freedom to offer services to other entities.

Tenn. Code Ann. § 50-6-102(12)(D)(i) (2016).

Based upon testimony at the Expedited Hearing, the Court holds Mr. Price was not an employee of Mr. Chambers. The testimony proved Mr. Price came and went on jobs as he pleased, working with Mr. Chambers on occasion and others with available work as well. There were occasions where Mr. Price would not have been able to work, if Mr. Chambers had not picked him up. Mr. Price submitted no employment application to Mr. Chambers, and he went through no hiring process in order to be hired by Mr. Chambers. After Mr. Chambers secured a job, he simply paid Mr. Price and other workers the same hourly rate he made in return for their help. Mr. Price supplied his own tools, and if he did not have a particular tool, he borrowed it from Mr. Chambers or other workers. There were no set working hours. Mr. Price was free to work for whomever he wanted, whenever he wanted.

Of primary importance in this matter, the evidence establishes that Mr. Price accepted or declined work as he pleased. Although he testified he worked on July 19, 2016, both Mr. Chambers and Mr. Torres testified he did not. The Court accredits the testimony of Mr. Chambers and Mr. Torres on this point. It is clear Mr. Price was a good worker and performed skillfully when he appeared for work, but his work ability is not the question. The question is whether Mr. Price was an employee of Mr. Chambers. It appears to the Court that Mr. Price was under no obligation to regularly and consistently offer his services to Mr. Chambers as an employee and he was free to work with whomever he chose for as long as he chose. Therefore, the Court finds that Mr. Price was not Mr. Chambers' employee.

Although the Court finds Mr. Price was not an employee of Mr. Chambers, the Court will also discuss Mr. Price's alleged work injury.

With regard to the compensability of Mr. Price's claim, the Workers' Compensation Law defines an "injury" as "an injury by accident . . . arising primarily out of and in the course and scope of employment that causes . . . the need for medical treatment." Tenn. Code Ann. § 50-6-102(14) (2016). Further, an injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14)(A) (2016). Arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005).

Here, the evidence as to what actually occurred on July 20, 2016, is highly disputed. Mr. Price testified he fell from a metal walk board *with Mr. Torres* and sustained the alleged injury. Mr. Chambers and Mr. Torres both testified there was no elevated metal walk board from which Mr. Price, or anyone else, could have fallen. They also testified it would be impossible for a worker to stand on a six-foot-high walk board and complete a twelve-foot roof, as Mr. Price alleged. According to both men's testimony, the only statement Mr. Price made before he left the jobsite was that he did not feel well. Neither testified they witnessed a fall. Mr. Torres' recollection of the events of that day did not include any fall, much less his own fall with Mr. Price.

The Court observed all the witnesses. The Court is mindful that Mr. Price appeared at Newport Medical Center on July 20, 2016, sometime after leaving the campground jobsite. He arrived at UT Medical Center at 4:53 p.m. that same day and was diagnosed with compression fractures in his thoracic spine.

The Court is not obliged to determine how Mr. Price's spine condition occurred. The Court must decide whether the offered proof established: 1) that he was Mr. Chambers' employee and 2) that his spine condition occurred as a result of a compensable work accident under the Tennessee Workers' Compensation Law. Mr. Price failed on both accounts. Given the evidence presented, the Court cannot find at this time that Mr. Price fell off a walk board on the jobsite and suffered an injury to his thoracic spine. Accordingly, the Court holds he has not come forward with sufficient evidence to establish he is likely to prevail at a hearing on the merits of his claim for workers' compensation benefits.

7

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Price's request for temporary disability and medical benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on January 23, 2017, at 10:00 a.m. Eastern Time.

**ENTERED this the 12th day of December, 2016.**

/s/ Brian K. Addington
**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

Scheduling Hearing:

A Scheduling Hearing has been set with Judge Brian K. Addington, Court of Workers' Compensation Claims. The parties must call 855-943-5044 toll-free to participate in the hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing

8

fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Expedited Request for Investigation Report
2. Medical Records-Physicians Regional Medical Center
3. Medical Records-University of Tennessee Medical Center
4. Medical Records-University Orthopedic Surgeons
5. Medical Records-Newport Medical Center Emergency Department
6. Business Card- C&C Contractors.

Technical Record:[2]

1. Petition for Benefit Determination, August 1, 2016
2. Dispute Certification Notice, October 3, 2016
3. Request for Expedited Hearing with attached Affidavit, November 2, 2016
4. Motion for Continuance of Expedited Hearing by Mr. Chambers
5. Employee's Response to Employer's Motion for Continuance of Expedited Hearing
6. Order Denying Employer's Request for Continuance.

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 12th day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Ben W. Hooper, Employee's Attorney | | | X | bwh3d@yahoo.com |
| Bobby Chambers, Self-Represented Employer | X | X | | 887 Mantooth Hills Road Newport, Tennessee 37821 865-475-8681 |

/s/ Penny Shrum
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

11